STATE of Missouri, Plaintiff–Respondent,

v.

Franklin BARBER, Defendant–Appellant.

No. ED 77085.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 6, 2001.

Nancy A. McKerrow, Asst. Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, MO, for respondent.

MOONEY, Presiding Judge.

Franklin D. Barber ("Defendant") appeals the judgment entered on his convictions for three counts of unlawful use of weapons, Section 571.030.1(4) RSMo (1994)[1] and two counts of third-degree assault, Section 565.070. Defendant was sentenced to one four-year sentence, two two-year sentences, a $500 fine, and a one-year sentence, all to be served concurrently. Defendant contends the trial court erred in overruling his motion for judgment of acquittal. More particularly, Defendant argues that convicting and sentencing him on both Count II and III, each charging unlawful use of a weapon, violates his right to be free from double jeopardy guaranteed by the 5th Amendment to the United States Constitution and the Missouri common law because his actions were part of a continuing course of conduct.[2]

We affirm.

### Facts

In January 1999, at approximately 2 a.m., fifteen-year-old Nicholas Alexander ("Alexander") was in the upper level of his family's home with his seventeen-year-old sister and his nine-year-old brother. His mother, LeVada Barber was downstairs in the living room when Alexander heard Defendant, his stepfather, arrive home. Alexander heard arguing, came downstairs to the living room, and saw Defendant standing over Mrs. Barber threatening her with a knife. Defendant claimed he would kill everyone in the house, and then lunged at Alexander with the knife after seeing him enter the room (Count II).[3] Defendant grabbed Alexander's upper arms while Alexander attempted to punch Defendant. The two then moved into the bathroom, where Defendant threw Alexander against the wall and held him there by his neck. Defendant again brandished the knife at Alexander, and again threatened that everyone in the house would die (Count III).[4] Defendant then banged Alexander's head into the bathroom wall, making a small crater. Alexander's older sister began hitting Defendant so that he would release Alexander. Defendant then threw Alexander into the bathtub, dropped the knife, and grabbed the older sister around the neck. Alexander rejoined the struggle, and the entire episode moved back to the living room. In the midst of the struggle, Defendant threw Alexander onto the couch. His older sister grabbed Alexander, and they escaped out the front door to a neighbor's house. Mrs. Barber called 911 and when police arrived at the home, Defendant shot at them. After a brief standoff, Defendant was apprehended. Police also confiscated the gun and an open switchblade knife from the living room of the family home.

### Analysis

In his only point on appeal, Defendant argues that the trial court should have granted his motion for judgment of acquit-

---

1. All statutory references are to RSMo (1994) unless otherwise noted.

2. Because he makes no complaint of error as to his convictions for Count I of unlawful use of weapons and the two counts of third-degree assault, judgment as to those counts is affirmed.

3. Regarding Count II, jurors were instructed to determine whether Defendant exhibited a weapon to one or more persons *in the living room.*

4. Regarding Count III, jurors were instructed to determine whether Defendant exhibited a weapon to one or more persons *in the bathroom.*

tal on either Count II or III, each charging unlawful use of a weapon, because his actions were part of a continuing course of conduct, not separate events; therefore, convicting and sentencing Defendant on both counts violates his right to be free from double jeopardy guaranteed by the 5th Amendment to the United States Constitution and the Missouri common law. We disagree.

 The protection from double jeopardy embodied in the 5th Amendment is the same as that provided by the common-law guarantee in this state. *State v. Morrow,* 888 S.W.2d 387, 390 (Mo.App. S.D. 1994) (citing *State v. Richardson,* 460 S.W.2d 537, 538 (Mo. banc 1970)). The Fifth Amendment to the United States Constitution provides that no person "shall be subject for the same offense to be twice put in double jeopardy of life or limb." This provision guarantees that one will not be subjected to multiple punishments for the same offense, and it prevents the state from splitting a single crime into separate parts and pursuing several prosecutions. *State v. Nichols,* 865 S.W.2d 435, 437 (Mo. App. E.D.1993).

 In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule. *State v. Childs,* 684 S.W.2d 508, 510–11 (Mo.App. E.D.1984) (citing *State v. Treadway,* 558 S.W.2d 646, 651 (Mo. banc 1977)). Under this rule, a defendant may be subject to multiple convictions for violations of the same statute if the defendant has in law and fact committed separate crimes. *State v. Murphy,* 989 S.W.2d 637, 639 (Mo.App. E.D.1999). Because Defendant's convictions occurred in a single trial, the only issue regarding double jeopardy is whether the legislature intended that cumulative punishments be imposed. This component of double jeopardy, protecting defendants from multiple punishments, limits the sentencing court to inflicting only the punishment that the legislature intended. *Missouri v. Hunter,* 459 U.S. 359, 368–369, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc 1992) (citing *Ohio v. Johnson,* 467 U.S. 493, 498–99, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984)). In determining whether the Missouri legislature intended cumulative punishments, or what the "allowable unit of prosecution" is, we first look to the statute under which Defendant was charged and convicted. *Murphy,* 989 S.W.2d at 639. If that statute is silent, then we look to the general cumulative punishment statute, Section 556.041. *Id.* at 640.

 Determining the allowable unit of prosecution for unlawful use of weapons under Section 571.030.1(4) is an issue of first impression in Missouri. With the principles regarding double-jeopardy analysis in mind, we now turn to Section 571.030, under which Defendant was charged and convicted, to determine whether the legislature intended to make each exhibiting an allowable unit of prosecution. Section 571.030.1 defines the crime of unlawful use of weapons, and the subsections referred to in this opinion are as follows:

A person commits the crime of unlawful use of weapons if he or she knowingly:

(1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use or;

(3) Discharges or shoots a firearm into a dwelling house, a railroad train, boat, aircraft, or motor vehicle as defined in section 302.010, RSMo, or any building or structure used for the assembling of people; or

(4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner.[5]

<hr/>

**5.** There are seven other subparts to this section that we do not address and need not state here.

When drafting this statute, the legislature clearly intended to allow cumulative punishments. Courts have interpreted subsection three of this statute, to allow for cumulative punishments for the same conduct. *Morrow,* 888 S.W.2d at 393. As stated in *Morrow,* the statute is designed to protect occupants of a dwelling house and to punish one who would fire a gun into a dwelling, placing the occupant's life in jeopardy. *Id.* Several shots may be prosecuted as separate offenses without violating double jeopardy because each shot creates the same danger that the statute was designed to prevent. *See also State v. Nichols,* 865 S.W.2d 435 (Mo.App. E.D.1993) in which this court held that subsection one also allows for cumulative punishments.

■ It would be improbable for the legislature to intend cumulative punishments for one type of unlawful use of weapons, but not for another. Subsection four, under which Defendant stands convicted, is designed to protect victims from the threat of being harmed by a weapon. Each exhibiting constitutes a separate offense because the conduct proscribed is complete upon one threatening flourish of a weapon. A subsequent exhibiting, whether separated by location or whether moments or a substantial amount of time later, re-creates the same danger that the statute was intended to prevent.

■ Further, Section 556.041 allows the State to prosecute and to convict a defendant for separate offenses even though they arise out of the same conduct:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however-

er, be convicted of more than one offense if

> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Courts have found separate offenses where the conduct is dissimilar or the actions are separated in time. Where the counts are based on different acts or a separate mens rea is formed for each act, crimes are different in nature. *See State v. Heslop,* 842 S.W.2d 72 (Mo. banc 1992) (two counts of theft). Where the defendant has the opportunity to reconsider his actions, a crime is separated in time. *See State v. Childs,* 684 S.W.2d 508 (Mo.App. E.D. 1984) (three counts of rape); *State v. Dennis,* 537 S.W.2d 652 (Mo.App.1976) (old code: two counts of rape).[6]

■ Defendant committed separate offenses for several reasons. First, Defendant's actions were separated in time. Initially, Defendant exhibited the knife to Mrs. Barber and Alexander in the living room. Then after lowering the knife for a time and moving the fight into the bathroom, he raised the knife to Alexander a second time. Although only a few seconds may have separated the events, Defendant clearly had time to reconsider his actions. *Heslop,* 842 S.W.2d 72. Second, space separated the two flourishes of the knife, indicating that Defendant could have reconsidered his actions. Third, Defendant formed the requisite mental state for each flourish of the knife. He acted "knowingly" by declaring both in the living room and in the bathroom that he would kill everyone in the house. Furthermore, he had the opportunity to abandon his crimi-

---

6. *But see* the following for cases upholding a claim that double jeopardy was violated. *State v. Baker,* 850 S.W.2d 944 (Mo.App. E.D. 1993) (defendant charged with four counts of possession of a weapon on the premises of a correctional facility; the court held that defining the offense in terms of possession of *"any knife"* resulted in an ambiguous unit of prose-

cution); *State v. Good,* 851 S.W.2d 1 (Mo.App. S.D.1992) (defendant charged with two counts of resisting arrest, each regarding a different officer; the court stated that the core of the offense is resisting the arrest, not how many officers were attempting to arrest defendant).

nal intent when the altercation moved from room to room.

Defendant argues to no avail that his conduct was a continuing course of action. In support of his argument, Defendant cites *State v. Horne*, 710 S.W.2d 310 (Mo. App. E.D.1986), where the defendant exhibited a gun to three young girls to force them into his car. *Id.* Under Section 571.030.1(4), one commits the offense of unlawful use of weapons when he exhibits a weapon in an angry or threatening manner in the presence of one *or more* persons. Consistent with the statute, the *Horne* court held that "a single act of exhibiting (in an angry or threatening manner), in the presence of however many persons, is one offense under the statute." *Id.* at 315. However, the number of victims of the flourishing of the weapon is not the issue here. In contention here is whether Defendant may be charged with multiple offenses when he exhibited a weapon at distinct times, in different places, with the requisite intent. Because *Horne* does not address the issue in this case, we find Defendant's argument unpersuasive.

Finally, deciding in favor of Defendant's contention that he should only be punished for one offense would violate public policy. We want to encourage criminals to abandon criminal behavior. Ruling that multiple flourishes of a weapon to the same person or to several people is an uninterrupted continuing course of conduct gives the criminal exhibiting the weapon no incentive to desist from his criminality. Therefore, we conclude that the trial court did not err in denying Defendant's motion for judgment of acquittal.

We affirm.

SIMON, J., and SULLIVAN, J., concur.