

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102318 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Julian Bush |
| LAWRENCE BRANDON, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 5, 2016 |

Lawrence Brandon ("Defendant") appeals from his convictions following a bench trial of: two counts of forcible rape, in violation of Section 566.030, RSMo (2000);[1] two counts of forcible sodomy, in violation of Section 566.060; two counts of first-degree robbery, in violation of Section 569.020; and six counts of armed criminal action, in violation of Section 571.015.[2] While we affirm the trial court's judgment in substance, we remand the cause to the trial court to correct the written sentences on four of the counts.

## I. BACKGROUND

Defendant was charged with a total of sixteen counts for events that occurred on the night of April 16, 2012, and into the early morning of April 17, 2012. Victim was leaving a bar where she occasionally worked when Defendant and two other co-defendants jumped out from behind a

---

[1] All further statutory references are to RSMo (2000).

[2] Defendant was acquitted of one count of kidnapping (Section 565.110), the accompanying count of armed criminal action (Section 571.015), and two counts of stealing a motor vehicle (Section 570.030).

dumpster brandishing a gun and told her to get in her car with them. While driving, the men took turns forcing Victim to perform oral sex and also forcibly sodomizing Victim. One of the men kept a gun pointed at Victim's head almost the entire time they were driving around.

When the men demanded money, Victim told them she did not have any. The men threatened to kill her if she did not give them money. Victim told the men she would call the owner ("Owner") of the bar she had been leaving that night and tell him she needed money to post bond for her brother. After Victim called Owner and he agreed to give her money, the men drove back to the bar.

Victim was moved to the front seat, and the men put a vest over her lap so Owner could not see that she was naked from the waist down. Owner came outside to where the men had parked and handed Victim between $200 and $300 through the window. He said Victim looked shaken up, but the window was not rolled all the way down and the windows were tinted, so it was difficult to see inside.

The men continued to drive the car around, raping and sodomizing Victim while she was held at gunpoint. Sometime during the night, the men stole Victim's jewelry, but she could not remember at what point this happened. The men made a few stops throughout the night for beer and rolling papers.

After they found Victim's insurance card, the men decided to drive to her house. They also found the key to Victim's daughter's car and took the car and moved it a few miles away. They all then got back in Victim's car and went to a gas station.

At the gas station, Defendant and another co-defendant went inside while the third man stayed in the front seat with the gun. Victim noticed that the man in the car was distracted by rolling marijuana into a joint and that the car doors were unlocked, so she fled from the car and

into the gas station screaming for help. She yelled to the clerk that the men had raped her and planned to kill her. After trying to pull her out of the store, Defendant and the other man ran away.

The three men were later apprehended after a chase with police in Victim's car. After police arrived at the gas station, Victim was taken to a hospital where a rape kit was taken. DNA testing later revealed a mixture of Defendant's DNA and one of his co-defendant's DNA. The next day Victim picked all three men out of three separate lineups.

Defendant waived his right to a jury trial. After a bench trial, the trial court found Defendant guilty of both counts of forcible rape and the associated counts of armed criminal action, both counts of forcible sodomy and the associated counts of armed criminal action, and both counts of robbery with the associated counts of armed criminal action. Defendant was sentenced to life in prison (999 years) for each count of forcible rape and sodomy, fifteen years in prison on each of the six armed criminal action counts, and ten years in prison on both of the robbery counts. The non-sex charges were all ordered to run concurrently with each other, with the sex-related charges to run concurrently with each other, but consecutive to the non-sex charges. This appeal follows.

## II. DISCUSSION

Defendant raises two points on appeal. First, he alleges the trial court plainly erred in convicting and sentencing Defendant on two separate counts of first-degree robbery and the corresponding armed criminal action counts, because this violated Defendant's right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Defendant argues that just because some of the stolen property was jewelry and some was currency, this does not give rise to two separate instances of robbery.

3

Defendant's second point on appeal alleges the trial court plainly erred in imposing the sentences on the sex-related counts to run consecutively to the other counts, violating Defendant's rights to be free from cruel and unusual punishment and to due process, as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and 21 of the Missouri Constitution. Defendant claims that, due to his juvenile status when he was sentenced, the mandatory consecutive sentencing provision violated his constitutional right to individualized sentencing.

Standard of Review

Defendant concedes that neither of his two points on appeal was properly preserved for review. Thus, the only review available to Defendant is for plain error. Rule 30.20. "'[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings.'" State v. Liberty, 370 S.W.3d 537, 546 (Mo. banc 2012) (quoting State v. Wickizer, 583 S.W.3d 519, 523 (Mo. banc 1979)). However, if a double jeopardy claim is determinable from the face of the record, it is entitled to plain error review. Liberty, 370 S.W.3d at 546, citing State v. Neher, 213 S.W.3d 44, 48 (Mo. banc 2007). We will reverse only if we find manifest injustice or a miscarriage of justice has resulted. Rule 30.20.

Point I:  Charging Defendant with Two Counts of Robbery Violated Double Jeopardy

In his first point, Defendant alleges the trial court erred in convicting and sentencing him on two separate robbery charges, instead of just a single charge, in violation of his right to be free from double jeopardy.

4

The Fifth Amendment to the United States Constitution provides no person "shall be subject for the same offense to be twice put in double jeopardy of life or limb." This constitutional protection also extends to prohibit multiple punishments from being inflicted for the same crime, barring "the state from splitting a single crime into separate parts and then prosecuting the offense in piecemeal." State v. Nichols, 865 S.W.2d 435, 437 (Mo. App. E.D. 1993).

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution protects the accused not only from successive prosecutions for the same offense after either an acquittal or a conviction, but also from multiple punishments for the same offense. Liberty, 370 S.W.3d at 546 (quoting State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992)). Double jeopardy analysis regarding multiple punishments is limited to determining whether cumulative punishments were intended by the legislature. McTush, 827 S.W.2d at 186 (citing Missouri v. Hunter, 459 U.S. 359, 366-69 (1983)); State v. Hardin, 429 S.W.3d 417, 421 (Mo. banc 2014). In determining legislative intent, we look to the "unit of prosecution" allowed by the statutes under which the defendant was convicted. Liberty, 370 S.W.3d at 547 (citing State v. Sanchez, 186 S.W.3d 260, 267 (Mo. banc 2006)). The scope of conduct comprising one violation of a criminal statute defines the unit of prosecution. We ascertain the allowable unit of prosecution first by looking to the statute under which the defendant was convicted, and if that statute is silent, then by looking to the general cumulative punishment statute, Section 556.041. Barber, 37 S.W.3d at 403.

Here, Defendant was convicted under Section 569.020 of two counts of first-degree robbery. Section 569.020.1(3) provides that "[a] person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the

5

crime . . . [u]ses or threatens the immediate use of a dangerous instrument against any person." Because the legislature did not specify in Section 569.020 the allowable unit of prosecution for first-degree robbery, we look to the general cumulative punishment statute, Section 556.041. Barber, 37 S.W.3d at 403.

While Section 556.041 provides that a defendant may not be convicted of more than one offense if "[t]he offense is defined as a continuing course of conduct and the [defendant's] course of conduct was uninterrupted," first-degree robbery is *not* defined in Section 569.020 as a continuing course of conduct. First-degree robbery is defined as a "forcible stealing" during which the defendant places a person under threat of harm. See Section 569.020.1(3). Thus, when the act of forcible stealing ends, the crime ends, regardless of whether the underlying threat of harm continues. In defining "forcible stealing," Section 569.010(1) states that "a person 'forcibly steals,' and thereby commits robbery, when, [specifically] *in the course of stealing . . .* he uses or threatens the immediate use of physical force upon another person for the purpose of" taking property. (emphasis added). The applicable statutes thus indicate that each separate instance of forcible stealing—*not* each continuous threat of force accompanied by stealing— constitutes a different robbery.

As Defendant notes, the double jeopardy clause forbids the State from splitting a single crime into separate parts for prosecution. State v. Polson, 145 S.W.3d 881, 896 (Mo. App. W.D. 2004) (finding double jeopardy violation where defendant suffered multiple punishments for *simultaneous* constructive possession of two differently-located but identical illegal substances); State v. Cunningham, 193 S.W.3d 774, 780-83 (Mo. App. S.D. 2006). However, Missouri courts have found separate offenses where "the conduct is dissimilar or the actions are *separated in time*." Barber, 37 S.W.3d at 404 (emphasis added) (finding separate offenses where defendant

6

was punished twice for unlawful use of a weapon, once for flourishing a knife in one room and again for flourishing it in another room "only a few seconds" later). Where the counts are based on different acts or a separate *mens rea* is formed for each act, crimes are different in nature. Id. (citing State v. Heslop, 842 S.W.2d 72, 76 (Mo. banc 1992)). If the defendant has the opportunity to reconsider his actions, the crimes are separate. Id.

To support his double-jeopardy claim of error here, Defendant is obligated to point to evidence that the theft of the jewelry and the theft of the money occurred during a single instance of forcible stealing. But Defendant fails to cite to any evidence in the record tending to show that he did not commit separate offenses in forcibly stealing both money and jewelry from Victim. Accordingly, we cannot conclude that the trial court plainly erred in convicting him of two robberies for the thefts. Defendant merely asserts on appeal that he deprived Victim of both the jewelry and the money through the use of a single, continuous threat of force. However, as noted above, it does not matter whether the underlying threat of force or harm in this case was continuing or instead intermittently suspended and then reapplied; either way, the threat does not indicate how many instances of "forcible stealing" occurred here.

Further, the thefts of the money and jewelry occurred over the course of a five-hour car ride and thus could have been separated by as much as several hours. The alleged continuity of the threat of force used in these thefts does not indicate that they were not separated by the passage of hours, thus giving Defendant plenty of time to form a separate *mens rea* for each theft. Because Defendant does not point to any evidence in the record tending to show that the theft of the jewelry occurred during the same instance of forcible stealing as did the theft of the money—or even that they occurred within minutes instead of hours of one another—Defendant fails to make a facial showing justifying plain error review. Point I is denied.

7

Point II:  Imposition of Consecutive Sentences for Rape and Sodomy not Unconstitutional

Defendant's second point on appeal alleges the trial court plainly erred in imposing his sentences for forcible rape and forcible sodomy to run consecutively to his other sentences because this violated his right to be free from cruel and unusual punishment.  Defendant again concedes this issue was not properly preserved for appeal, so our review is again limited to a search for plain error, and we will reverse only if we find a manifest injustice or miscarriage of justice has resulted.  Rule 30.20.

Defendant attempts to rely on Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 132 S.Ct. 2455 (2012).  However, neither case applies to the case at hand.

In Graham, the Supreme Court held that the imposition of a sentence of life-without-parole for a juvenile who committed a nonhomicide offense was unconstitutional.  560 U.S. at 74.  However, the Court pointed out that "while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life."  Id. at 75.

In Miller, the Supreme Court held that even for juveniles who commit a homicide, a mandatory sentence of life-without-parole is unconstitutional as violating the Eighth Amendment.  132 S.Ct. at 2469.  The Court also stated that a trial court must consider the juvenile's youth and circumstances before imposing a life-without-parole sentence for a homicide offense.  Id.

Here, Defendant was not sentenced to life-without-parole.  Defendant received life sentences on both of his forcible rape counts and both of his forcible sodomy counts.  These, as per Section 558.026.1, ran consecutively to the rest of the non-sex related offenses, but

8

concurrently with each other.  Defendant attempts to argue that the mandatory imposition of consecutive life sentences here prohibits the trial court from considering Defendant's juvenile status.  However, as emphasized in Graham:

> [W]hile the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.  Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.  The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.  It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

Graham, 560 U.S. at 75.

This is a case where Defendant's crimes can readily be described as "truly horrifying."  He and two accomplices forced Victim into her car at gunpoint, drove around for several hours taking turns raping and sodomizing her, and forcibly stole both money and jewelry from Victim.

We find no error in the trial court's imposition of concurrent life sentences running consecutive to other sentences, as this did not constitute cruel and unusual punishment, even when considering Defendant's juvenile status when the crimes were committed.  Defendant's second point is denied.

Finally, Defendant requests that we correct the sentence of "Life (999) years" for the two counts each of forcible rape and forcible sodomy to life imprisonment, as that was the oral pronouncement of the sentence.  The State agrees the written judgment should be corrected to reflect the trial court's oral pronouncement.  The cause is remanded to the trial court to remove the reference to 999 years from the written sentence for the two counts each of forcible rape and forcible sodomy.

### III. CONCLUSION

Defendant's convictions are affirmed.  The cause is remanded to the trial court to correct the written sentence on Counts 3, 5, 7, and 9.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs.
Mary K. Hoff, J., concurs.