STATE of Missouri, Plaintiff-
Respondent,

v.

Bobby A. WATKINS, Defendant-
Appellant.

No. SD 34350

Missouri Court of Appeals,
Southern District,
Division One.

Filed: November 21, 2017

839

JIM R. BRUCE II, Kennett, MO, for Appellant.

GREGORY L. BARNES, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Bobby A. Watkins ("Defendant") was found guilty after a bench trial of stealing (Count 1) and forgery (Count 2), and both offenses were categorized and sentenced as class C felonies. *See* sections 570.030.1 and .3(1) and 570.090.1(3).[1]

Defendant's first point on appeal claims the forgery conviction cannot stand because "the [S]tate's only proof consisted of a written job work order" that "is plainly excluded as a basis for the crime of forgery" under section 570.090.1(3), which addresses "anything other than a writing[.]" Point 2, relying on *State v. Bazell*, 497 S.W.3d 263, 266-67 (Mo. banc 2016), challenges the classification of the stealing conviction as a felony because, at the time of

---

1. Venue for the case was changed from Pemiscot County to Dunklin County. References to sections 556.041, 556.046, and 562.041, are to RSMo 2000. All other statutory references are to RSMo Cum. Supp. 2009. All rule references are to Missouri Court Rules (2017).

the offense, section 570.030.3 did "not apply to enhance the punishment and classification" of the offense from a misdemeanor to a felony.[2]

Defendant's third point challenges his conviction and punishment for both offenses as violating his right to be free from double jeopardy in that he suffered "a greater punishment than that authorized by the legislature for stealing under [section] 570.030, and that it imposed multiple or cumulative punishment for the same offense based on the same job work order." Point 4 contends that his "videotaped confession" should have been suppressed because although the officer believed that he "had enough information at the time they began the interview to arrest [Defendant]," the officer "repeatedly assur[ed Defendant] that he was not in custody, or in any trouble no matter what he said," and Defendant made the incriminating statements "before they read him his Miranda rights[.]"[3] Finally, Point 5 claims the trial court erred as a matter of law in denying Defendant's request for a suspended imposition of sentence ("SIS") because the trial court "failed to consider circumstances favoring a [SIS]" and instead "focused exclusively" on Defendant forfeiting his office as mayor of the city of Hayti.

Finding merit only in Defendant's challenge to the enhancement of his stealing offense, we reverse Defendant's sentence on Count 1 and remand that count for resentencing as a misdemeanor. *See Smith*, 522 S.W.3d at 230-31. In all other respects, we affirm the judgment of conviction and sentence.

## Evidence and Procedural History [4]

Count 1 of the State's information charged Defendant with "the class C felony of stealing by deceit" (*see* section 570.030) based upon Defendant's appropriation of "money of a value of at least five hundred dollars" that belonged to the county by representing to the county that the work order for Defendant's relative "was legitimate and accurate, which representation was false and known by [Defendant] to be false and [the county] relied on the representation and was thereby induced to part with" the money. Count 2 charged Defendant with forgery based on section 570.090.1(3) for making the work order "for repairs and parts made in the name of [Defendant's relative] so that it purported to have a genuineness that it did not possess" and did so with the intent to defraud.

Marty Culver was a maintenance worker for Pemiscot County and member of Hayti's city council at the time of the charged conduct. He "became better friends" with Defendant while Defendant was mayor. On several occasions in April 2011, Defendant loaned Mr. Culver money in amounts of "six or seven hundred here, maybe another five or six there." A "scheme was put into place" by Mr. Culver and Defendant to use "the county's money" to pay some of the money Mr. Culver owed Defendant.

In pursuit of that scheme, Mr. Culver "drew up a dummy ticket" ("the work or-

---

2. "As of January 1, 2017, a new version of section 570.030 took effect, which does not include the key language on which the *Bazell* decision was premised." *State v. Smith*, 522 S.W.3d 221, 229 n.8 (Mo. banc 2017).

3. Presumably a reference to *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The bench trial took place in December 2015. In accordance with our standard of review, we recite the relevant evidence in the light most favorable to Defendant's convictions and ignore all contrary evidence. *State v. Yung*, 246 S.W.3d 547, 549 (Mo. App. S.D. 2008).

der") in the amount of $758 and "submitted it to the county for payment" as though it were "any other bill[.]" Defendant did not see the work order, but he knew that Mr. Culver "was going to submit a bill to the county in order for [Defendant] to get a check cut to him." A copy of the work order, dated April 6, 2011, was admitted into evidence as Exhibit A. Defendant did not want the work order to be made out in his name because he thought it would then "show up in the newspaper." He therefore suggested that they use the name of one of his relatives as the vendor listed on the work order.[5] Defendant then gave what Mr. Culver believed to be Defendant's own address to use as the address of the vendor. Mr. Culver dated and signed his initials on the work order before submitting it to the county commission for payment. Defendant's relative had not performed "any of the services" represented on the work order, but the work order "was approved through the County Commission just like any other bill would be[.]"

Mr. Culver never spoke with Defendant's relative, but Defendant subsequently indicated to Mr. Culver that Defendant had received the cash from the check and its amount "was deducted off the balance that [Mr. Culver] owed [Defendant]." Defendant also indicated to Mr. Culver that Defendant's relative "wasn't even aware of" the work order.

Mr. Holder was a captain for the sheriff in September 2011. In that capacity, he began investigating a report of forged documents involving Mr. Culver. After meeting with Mr. Culver, Mr. Holder and another law enforcement officer, "Sergeant Stoelting[,]" interviewed Defendant, and the interview was video-recorded. When a redacted copy of the video was offered at

trial as Exhibit C ("redacted video"), Defendant objected to its admission on the ground that Defendant's statements were not "voluntarily made[,]" deception was used to obtain the statements, and "the statements were not taken on [sic] good faith[.]" Defense counsel did not contest the prosecutor's claim that a motion to suppress those statements had not been filed within the time period the trial court had allowed for the filing of such motions. The trial court overruled Defendant's trial objection, granted Defendant's request that it be considered a continuing objection, and allowed the redacted video to be played.

The redacted video provided the following evidence. Defendant regarded himself as an "open book" and was willing to talk with the officers, but he declined an invitation to sign the Highway Patrol's Miranda Rights form. Defendant talked with Mr. Culver about sending the check to Defendant's relative. Mr. Culver had borrowed money from Defendant and still owed him over $1,000. When Mr. Culver offered to "cut [Defendant] a check through the county," Defendant said that he could not be involved in that or have his name on it because his name would "stand out[.]"

After Defendant and Mr. Culver had "thought about it a while[,]" Defendant suggested making the check out to his relative. Defendant said that this was "stupidity" and "weakness" on his part. Mr. Culver had the check printed and brought it to Defendant. Defendant's relative endorsed the check at Defendant's request because the relative trusted him. The "whole thing" was about using someone else's money to pay the money Mr. Culver owed Defendant.

5. Mr. Culver referred to Defendant's relative by name and described him as Defendant's father-in law. The State's other witness, Ryan

Holder, identified this individual as Defendant's "father-in-law—or the actual stepfather[.]"

The officers showed Defendant a copy of a check and asked Defendant if he recognized it. Defendant was unsure, but he thought that he might still have a "stub" of the check that had been cashed by his relative. When asked if he could bring the "stub" in, Defendant asked, "Am I digging myself a deeper hole?" Sergeant Stoelting replied that he wanted to make sure that there were no other checks at issue. Defendant copied down the number of the copy of the check he was shown to compare with the "stub" he thought he had at home.

Defendant was not arrested, and he was permitted to leave the sheriff's office at the end of the interview. Defendant later gave Mr. Holder a copy of the check stub that matched the check cashed by Defendant's relative. A copy of the front and back of the check had been reproduced on bank letterhead, and that document was admitted into evidence as Exhibit B. The exhibit also included details about the bank's processing of the check. After deliberation, the trial court found Defendant guilty of both stealing and forgery.

Seven witnesses testified on behalf of Defendant at his sentencing hearing, and defense counsel also submitted "letters" (which were not marked as exhibits) to the trial court, including a letter described as being from a news reporter responding to an "anonymous letter" that had been incorporated into a Probation and Parole report. The trial court took the reporter's letter "into consideration."

The State argued for a suspended four-year sentence, five years of probation, restitution, and "an order under [section] 561.021 indicating that [Defendant] forfeit his office as he has been convicted of a felony." Defense counsel argued that an unsupervised SIS was the appropriate punishment. The trial court sentenced Defendant to four years imprisonment on each count, suspended the execution of those sentences, and placed Defendant on a three-year term of supervised probation.

When defense counsel requested clarification of the sentence, the trial court stated:

It is a suspended execution of sentence.

I know these types of decisions are very difficult to make because the Court recognizes certainly that [Defendant] has worked to help the citizens of Hayti, he appears to have done some good things for that city as mayor. Certainly seems to be a good husband and father. However, he's made a horrible mistake, a crime that has contributed to the growing mistrust of the general public of public officials and government.

The prosecutor requested that "as part of [the] sentence [the trial court] find [Defendant has] forfeited his office under Missouri statute." The trial court responded by saying "so order[ed]."

This appeal timely followed the trial court's entry of its written judgment of conviction and sentence.

## Analysis

In an appeal of a criminal case, "[t]he form and contents of the briefs shall contain the material prescribed by Rule 84.04 and Rule 84.06." Rule 30.06(a). Here, Defendant fails "[f]or each claim of error" to include in his argument "the applicable standard of review[,]" Rule 84.04(e), and, in some instances, he also fails to include "a concise statement describing whether the error was preserved for appellate review; [and] if so, how it was preserved[.]" *Id.*

The standard of review is an essential portion of all appellate arguments; it outlines this court's role in disposing of the matter before us. While it would be

easy enough for this court to determine the applicable standard of review, it is not our duty to supplement the deficient brief with our own research.

*Waller v. Shippey*, 251 S.W.3d 403, 406 (Mo. App. W.D. 2008) (internal citation omitted).

■ "Although it may sometimes be possible to reach the merits of a claim of error that does not comply with Rule 84.04(e), '[n]oncompliance with this rule justifies dismissal of the point.'" *Anglin Family Investments v. Hobbs*, 375 S.W.3d 244, 249 (Mo. App. S.D. 2012) (quoting *Citizens for Ground Water Prot. v. Porter*, 275 S.W.3d 329, 347 n.6 (Mo. App. S.D. 2008)). We will consider the effect of Defendant's failure to satisfy Rule 84.04(e) as we analyze his individual points, which we address out of order.

### Point 2—Stealing Enhancement

■ Citing *Bazell*, 497 S.W.3d at 266, Defendant argues that section 570.030.3 "does not apply to enhance the punishment and classification for the misdemeanor offense of stealing to a class C felony." At the time of Defendant's offense, section 570.030.1 provided that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." Section 570.030.3(1) provided that "any offense in which *the value of property* or services *is an element* is a class C felony if: ... [t]he value of the property ... appropriated is five hundred dollars or more but less than twenty-five thousand dollars[.]" (Emphasis added.) Our high court noted that section 570.030.1 did "not include the value of the property or services appropriated as an element of the offense." *Bazell*, 497 S.W.3d at 265.

In a post-briefing letter to this court, the State concedes that this case should be remanded for resentencing on Count 1, and we agree. "*Bazell* draws no distinction among the numerous subcategories enumerated within section 570.030.3." *Smith*, 522 S.W.3d at 230. Under the version of section 570.030.3 in effect at the time of Defendant's conduct, his stealing offense could not be enhanced from a misdemeanor to a felony. Point 2 is granted.

### Point 3—Double Jeopardy

■ Defendant's third point claims he was subjected to double jeopardy by receiving "a greater punishment than that authorized" for stealing (now moot in view of our resolution of Point 2) and by the imposition of "multiple or cumulative punishments for the same offense based on the [work] order."[6] The Fifth Amendment's double jeopardy clause "provides two basic protections: it protects defendants from successive prosecutions for the same offense after acquittal or conviction and it protects defendants against multiple punishments for the same offense." *State v. Hardin*, 429 S.W.3d 417, 421 (Mo. banc 2014).

■ Defendant's argument fails to indicate how his claim of multiple punishments was preserved for review, and he fails to cite the applicable standard of review as required by Rule 84.04(e). Nonetheless, our review of double jeopardy claims is *de novo*, *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000), and "if a double jeopardy

---

6. Point 3 does not specify the source of the double jeopardy protection that Defendant claims. *See State v. Alexander*, 505 S.W.3d 384, 396 n.5 and 397 (Mo. App. E.D. 2016) (contrasting double jeopardy clauses in the Fifth Amendment of the United States Constitution and article 1, section 19 of the Missouri Constitution). The argument supporting the point refers only to the Fifth Amendment, and our analysis is limited to that clause.

claim is determinable from the face of the record, it is entitled to plain error review." *State v. Brandon*, 523 S.W.3d 476, 480 (Mo. App. E.D. 2016).

■ "Double jeopardy analysis regarding multiple punishments is limited to determining whether cumulative punishments were intended by the legislature." *Id.* "In the absence of an offense-specific indication of legislative intent, the legislature's general intent regarding cumulative punishments is expressed in section 556.041[.]" *Hardin*, 429 S.W.3d at 422. This general intent is in favor of "cumulative punishments unless the offenses at issue fall into one of the statute's exceptions." *Id.*

Section 556.041 provides:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(1)  One offense is included in the other, as defined in section 556.046; or

(2)  Inconsistent findings of fact are required to establish the commission of the offenses; or

(3)  The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4)  The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Point 3 cites none of the exceptions listed in section 556.041. The argument relies on section 556.041(1)—"[o]ne offense ... included in the other"—and it also cites section 556.046.1(1), which "sets forth the definition of a lesser-included offense." [7] *Hardin*, 429 S.W.3d at 422. Defendant's argument then focuses on similarities in how the two counts were charged, along with the evidence supporting the charges in his case.

■ *Hardin* reminds us that section 556.046.1(1) "sets up an elements test,

7.  Defendant also cites section 556.041(3) as prohibiting separate punishments for stealing and forgery as he claims they are offenses that differ only insofar as one is a general offense and the other is a specific instance of the general offense. Defendant cites no authority backing his claim that forgery is a specific instance of stealing. On the contrary, in *State v. Pilousek*, 747 S.W.2d 766, 770 (Mo. App. E.D. 1988), the Eastern District reasoned:

We are unable to conclude that forgery is merely a specific definition of a means to commit the generic crime of stealing. While it is true that frequently forgery is a means utilized to steal, the crime itself involves the creation or alteration of a document or physical object with the intent to defraud. Its purpose is to preserve the sanctity of those items upon which people rely. Stealing is the appropriation of the property or services of another. Forgery is a completed crime when the creation or alteration occurs with the requisite intent whether or not the fraud is consum[m]ated. Not every fraud meets the statutory definition of stealing.

Defendant attempts to distinguish *Pilousek* on the basis that it did not involve a double jeopardy challenge *per se*. While that is true (Ms. Pilousek challenged her sentences based on an application of section 556.041 without also resorting to a constitutional jeopardy challenge), the case nonetheless analyzed whether forgery was a subspecies of stealing. And because "[d]ouble jeopardy analysis regarding multiple punishments is ... limited to determining whether cumulative punishments were intended by the legislature[,]" *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992), either route takes us to the application of section 556.041 in analyzing the relationship between stealing and forgery for purposes of section 556.041(3).

under which the elements of the offenses at issue are gleaned from the statutory provisions and compared." 429 S.W.3d at 422. " 'If each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes.' " *Id.* (quoting *McTush*, 827 S.W.2d at 188). "Analysis under either [section] 556.046.1(1) or *Blockburger* [*v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ], focuses on the statutory elements of the offenses rather than upon the evidence actually adduced at trial." *McTush*, 827 S.W.2d at 188.

If a statute may be violated in multiple ways, the critical issue for double jeopardy analysis is what the statute *requires*; the analysis does not involve how the "offense is indicted, proved, or submitted to the jury." *Hardin*, 429 S.W.3d at 423-24. Under section 556.046.1(1), a lesser-included offense "is established by proof of the same or less than all the facts *required* to establish the commission of the offense charged[.]" (Emphasis added.) For instance, the defendant in *Hardin* was convicted of aggravated stalking and violating a protective order. *Id.* at 419. The Court reasoned:

> aggravated stalking *may* be established by proof of a protective order violation, but it may also be established by proof of other facts. A protective order violation is not a fact proof of which is required to establish commission of aggravated stalking. Aggravated stalking does not, therefore, include the offense of violating a protective order. Hardin's convictions for aggravated stalking and violating a protective order did not violate double jeopardy.

*Id.* at 424.

The crime of forgery may be committed in multiple ways. Section 570.090.1 provides:

> A person commits the crime of forgery if, with the purpose to defraud, the person:
>
> (1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority; or
>
> (2) Erases, obliterates or destroys any writing; or
>
> (3) Makes or alters anything other than a writing, including receipts and universal product codes, so that it purports to have a genuineness, antiquity, rarity, ownership or authorship which it does not possess; or
>
> (4) Uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or other thing including receipts and universal product codes, which the actor knows has been made or altered in the manner described in this section.

■ The offense of stealing requires: "(1) an appropriation; (2) of property or services; (3) of another; (4) with the purpose to deprive the other thereof; and (5) accomplished either without the owner's consent or by deceit or coercion." *State v. Pherigo*, 389 S.W.3d 693, 700 (Mo. App. S.D. 2012) (quotations omitted); *see also* section 570.030.1. For purposes of stealing, " '**Appropriate**' " means "to take, obtain, use, transfer, conceal or retain possession of[.]" Section 570.010(2); *see also State v. McDonald*, 321 S.W.3d 313, 321 (Mo. App. S.D. 2010).

■ Regardless of the means used to aid and abet Mr. Culver [8] in stealing money from the county, the stealing statute does not include forgery because stealing does not *require* a writing or other thing in order to effectuate the appropriation, and the forgery statute does not include stealing because a forgery does not *require* an appropriation. Therefore, Defendant's right to double jeopardy-protection from multiple punishments for the same offense was not violated. Point 3 is denied.

### Point 4—Defendant's Videotaped Confession

■ Defendant's fourth point claims error in admitting his videotaped confession "because it was obtained by police investigators without his knowing, intelligent and voluntary waiver of his right to an attorney and right against self-incrimination[.]" Defendant argues that his counsel objected to the redacted video and made an offer of proof to show that there had been no "knowing, intelligent and voluntary waiver of his constitutional rights embodied in Miranda." [9]

Even if we were to determine that Defendant's failure to provide a concise statement of the standard of review did not impede our review of this issue, *and* we were to presume that the trial court erred in admitting Movant's confession—which we do *not* find—Defendant's failure to address whether the alleged error requires reversal dooms his point. *See State v. Ramirez*, 447 S.W.3d 792, 796-97 (Mo. App. W.D. 2014) (the appellate court "need not decide if the detective's actions amounted to interrogation in violation of Ramirez's Fifth Amendment rights because" it concluded a failure to exclude the statement was, at most, harmless error).

■ We will uphold "an otherwise valid conviction when" we are confident "that the constitutional error was harmless beyond a reasonable doubt." *State v. Bell*, 488 S.W.3d 228, 245 (Mo. App. E.D. 2016). "The application of harmless error is based on a continuum that is not subject to absolutes[,]" *id.*, and we assess "the relative harm improper evidence may inject depending on its strength, its relevance, and

---

8. It would have been reasonable for the trial court to determine from the evidence that Defendant and Mr. Culver each aided the other in committing the offenses. *Cf. State v. Wooden*, 388 S.W.3d 522, 527 (Mo. banc 2013) (in assessing the sufficiency of the evidence, the appellate court "accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore[s] all contrary evidence and inferences"). As explained in *State v. Holmquest*, 243 S.W.3d 444, 448 (Mo. App. W.D. 2007):

A person is deemed criminally responsible for the conduct of others when "with the purpose of promoting the commission of an offense, [she] aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2). It is not necessary that the defendant personally commit the elements of the offense. [*State v.*] *Barnum*, 14 S.W.3d [587,] 591 [ (Mo.

banc 2000)]. "Mere encouragement is enough." *Id.* Encouragement is conduct that by any means approves another's criminal action. *Id.* This includes encouraging or exciting a criminal act by words, gestures, looks, or signs.

Further, "[a] defendant can be charged as a principal in the commission of a crime and convicted under a theory of accomplice liability." *State v. Goss*, 259 S.W.3d 625, 627 (Mo. App. S.D. 2008).

9. Although the trial court had discretion to entertain during trial a motion to suppress not raised prior to trial in accordance with Rule 24.05, *see State v. Galazin*, 58 S.W.3d 500, 504-05 (Mo. banc 2001), such claims should be made before trial—especially in a jury trial—to avoid delays during trial and to provide "a fair chance" for the State to respond. *Id.*

the presence of other evidence of guilt." *Ramirez*, 447 S.W.3d at 797.

Here, Defendant claims that the significance of his confession is that it provided the only basis for admitting the check into evidence because Mr. "Holder had no personal knowledge of the issuance of the check, its payment, delivery, or receipt by [Defendant.]" Defendant argues that the check was critical because "[a]n essential element [of the stealing charge] is a showing that [Defendant] appropriated the check[.]" We disagree.

Count 1 charged Defendant with stealing the county's *money*, not with stealing a check. Mr. Culver testified that Defendant "got the cash" that resulted from the work order as the men had agreed in order to use the "the county's money" to pay Mr. Culver's debt to Defendant. Mr. Culver testified that the work order bore the *name* of Defendant's relative, but it used Defendant's *address* as Defendant had requested. Mr. Culver testified that the relative had not performed the services indicated on the work order, and the county approved payment of the work order "like any other bill." Because Defendant was charged with stealing the county's money, and the trial court could have found Defendant guilty beyond a reasonable doubt of that offense based solely upon Mr. Culver's testimony and the work order, any error in admitting into evidence Defendant's statements about the check was harmless beyond a reasonable doubt. Point 4 is denied.

**10.** Section 570.010(15) defines a writing as "includ[ing] printing, any other method of recording information, money, coins, negotiable instruments, tokens, stamps, seals, credit cards, badges, trademarks and any other symbols of value, right, privilege or identification."

*Point 1—The Work Order as a Basis for the Forgery Conviction*

Defendant's first point and its supporting argument maintains that he could not be convicted of forgery under section 570.090.1(3) based upon the work order because this subsection "by its terms expressly excludes from its coverage writings 'including receipts and universal product codes,'" and the state's only proof of the forgery was the work order, which "constituted a writing." [10]

■ As highlighted in our analysis of point 3, forgery may be committed when the actor has the purpose to defraud and: (1) "[m]akes, completes, alters or authenticates *any writing*" in an impermissible manner; (2) "[e]rases, obliterates or destroys *any writing*"; (3) "[m]akes or alters *anything other than a writing*, including receipts and universal product codes" in an impermissible manner; or (4)

> [u]ses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, *any writing or other thing* including receipts and universal product codes, which the actor knows has been made or altered in the manner described in this section.

Section 570.090.1 (emphasis added). Count 2 cited subsection .1(3)—which refers to something "other than a writing"—even though the count identifies the written work order as the object of the forgery. The point does not assert that the work order does not qualify as a "writing[,]" and it does not claim that the State failed to prove any other element of forgery.[11]

**11.** Defendant's argument references the State's "reliance upon a writing generated solely by [Mr.] Culver in which [Defendant] had no involvement or knowledge of what was included in the order." Defendant also argues that the State's failure "to charge and prove that [Defendant] either made or altered one of the items specified in the statute" was

▮ Once again, the argument supporting the point fails to concisely state whether the alleged error was preserved for review, and it does not identify the applicable standard of review. *See* Rule 84.04(e). The point simply concludes that "the court's conviction and sentencing for forgery was not only an error of law but was in addition plainly erroneous and must be vacated and [Defendant] discharged." It makes these claims without providing any citation to authority or explanation as to why this is so. The failure to provide such support materially impedes our review of what strikes us as a mere variance between the charge and the evidence presented at trial. *Cf. State v. Dean*, 382 S.W.3d 218, 223-24 (Mo. App. S.D. 2012) (a bench-tried case in which the appellant defendant "framed [his] argument as an attack on the sufficiency of the evidence, [but] it actually [was] an unpreserved argument that there was a variance between the charging document and the evidence presented at trial").[12]

▮ Even if Defendant had requested plain-error review of the point, he could not prevail. Although he claims that "a manifest miscarriage of justice" resulted, he fails to provide any analysis or authority demonstrating the existence of that critical requirement for obtaining relief. *See State v. Baumruk*, 280 S.W.3d 600, 607-08 (Mo. banc 2009) (plain error requires a showing of "evident, obvious, and clear" error and also that manifest injustice or a miscarriage of justice resulted from the error) (quotation omitted). Point 1 is denied.

### *Point V—The Denial of a SIS*

▮ Defendant's fifth point claims the trial court erred "as a matter of law" in failing to "consider circumstances favoring a [SIS]" because it would have permitted Defendant to remain the mayor of Hayti. The point maintains "that there was no nexus or relation between [Defendant's] office and the offenses with which he was charged[,]" and denying a SIS "sets an impossibly high standard for a" SIS in that it forces public officials "to relinquish their offices to gain the benefit of a" SIS.[13]

Defendant's argument cites no standard by which we are to review the sentence

"a manifest miscarriage of justice." To the extent that this language is intended to challenge Defendant's criminal liability, *see also* footnote 10, *supra*, such a contention is not contained in the point relied on, and we do not consider it. *State v. Lammers*, 479 S.W.3d 624, 636 n.13 (Mo. banc 2016).

12. A variance must be both material and prejudicial. *Id.* Only where the variance impacts the defendant's ability to adequately defend the charge does prejudice result. *State v. Bradshaw*, 411 S.W.3d 399, 403 (Mo. banc 2013). Discretionary plain error review of such a claim depends heavily on an analysis of the specific facts and circumstances of the case and hinges upon a manifest injustice or miscarriage of justice. *See Dean*, 382 S.W.3d at 224.

13. Point 5 also asserts that denying a SIS "is contrary to … the due process and equal protection clauses of the Fourteenth Amendment." Beyond the point itself, Defendant's argument says nothing further regarding due process and equal protection under the Fourteenth Amendment except to state that Defendant informed the trial court before trial that he rejected resignation of office as a part of a plea agreement based upon his belief about the protections of these clauses and he argued at sentencing that "the Constitution prohibited such a condition [resigning office] absent any nexus of facts that he had misused his office as mayor[.]" The argument portion for this point, however, does not satisfy Rule 84.04(d) because it does not explain how these clauses were violated. "Arguments raised in the points relied on portion of an appellate brief that are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review." *State v. Nunley*, 341 S.W.3d 611, 623 (Mo. banc 2011).

ordered by the trial court. As noted, the point alleges that the trial court erred as a matter of law, but Defendant cites no authority for the proposition that we are to review his sentence *de novo*. *See State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000) ("Under Missouri law, the standard of review requires the reviewing court to defer to the trial court's factual findings and credibility determinations, but to examine questions of law *de novo*"). Given that "[a] trial court's sentencing decision is reviewed for abuse of discretion[,]" *State v. Fields*, 480 S.W.3d 446, 453 (Mo. App. W.D. 2016), an invitation to review *de novo* this denial of a SIS would require us to first create and then support an argument that has not been made, thereby taking us out of our proper role of impartial reviewer and impermissibly placing us in the position of acting as Defendant's advocate.[14] Point 5 is denied.

Defendant's Count 1 sentence for felony stealing is reversed, and that count is remanded for resentencing as a misdemeanor. In all other respects, the judgment of conviction and sentence is affirmed.

MARY W. SHEFFIELD, P.J.—CONCURS

GARY W. LYNCH, J.—CONCURS

---

14. Cf. *State v. Strobel*, 126 S.W.3d 456, 458 (Mo. App. W.D. 2004) (appellate court would not "act as an advocate to determine the precise nature of the [appellant's] argument"). The argument supporting Point 5 adds a contention that is not a part of the point, claiming, without citation to authority, that "[i]n ordering the forfeiture of office in the context of a criminal case, the [trial] court was without subject matter jurisdiction and acted outside of its authority." We need not decide this unpreserved contention. *Lammers*, 479 S.W.3d at 636 n.13.