

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| MICHAEL W. STUART, | ) | No. ED106050 |
| | ) | |
| Appellant/Movant, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| vs. | ) | 16BB-CC00075 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Wesley C. Dalton |
| | ) | |
| Respondent. | ) | FILED: January 29, 2019 |

### OPINION

Michael W. Stuart ("Movant") appeals from the "Memorandum, Decision, and Judgment Denying Motion for Post-Conviction Relief" ("Judgment") denying his Rule 24.035 motion following an evidentiary hearing. We affirm in part and reverse and remand in part.

### Factual and Procedural Background

Movant was charged by amended information as a prior and persistent offender with one count of resisting a lawful stop, in violation of Section 575.150, RSMo 2000.[1] Movant was also charged in a separate information with one count of distribution of a controlled substance and one count of distribution of not more than 5 grams of marijuana, in violation of Section 195.211. On August 2, 2016, Movant appeared before the plea court for the purposes of pleading guilty to the offenses.

---

[1] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

During the plea hearing, Movant stated that his attorney, Katy Thoman ("Ms. Thoman"), had represented him throughout both cases. Movant also stated that he was aware of the charges against him, that he had enough time to discuss his cases with his attorney, and that he had no complaint about how his attorney had handled his cases. Movant affirmed that he understood the specific constitutional rights attendant with a plea and appeal that he was giving up by pleading guilty. Movant understood that by pleading guilty he was admitting to the essential elements in all of the charges in both of the cases. Movant pled guilty pursuant to a plea agreement whereby he would receive a seven-year sentence that would run consecutively to his other charges and that he would also enter the Long Term Drug Program ("LTDP"), pursuant to Section 217.362.[2] A "Memorandum of Plea Agreement" signed by Movant, Ms. Thoman, and the prosecutor reflects those exact terms.

With regard to the first case, Case No. 15BB-CR00763-01, Movant admitted that on April 18, 2015, in Warren County, Officer Tommy Tomlin ("Officer Tomlin") was attempting to make a lawful stop of the vehicle Movant was operating, that Movant knew the officer was making a lawful stop, but for the purpose of preventing Officer Tomlin from effecting the stop, Movant fled "in such a manner that created a substantial risk of serious physical injury or death to other persons" by operating his vehicle "at speeds in excess of one hundred miles per hour, pass[ing] cars on the shoulder of the road and in no passing zones, and fail[ing] to stop at stop

---

[2] Section 217.362 provides for "an intensive long-term program for the treatment of chronic nonviolent offenders with serious substance abuse addictions who have not pleaded guilty to or been convicted of a dangerous felony as defined in section 556.061." Section 217.362.1. The statute also provides that the offender's sentence may be suspended in favor of probation in the discretion of the trial court upon the successful completion of the treatment program. Section 217.362.3.

signs." Movant also acknowledged that he was a prior and persistent offender, which could raise his punishment to a C felony.

Thereafter, the plea court found Movant to be a prior and persistent offender. When asked, Movant admitted that no threats or promises had been made to entice him to plead guilty and that no promises had been made or could be made as to what his sentence would be. Movant also stated that he understood the court could impose any sentence within the range of punishment permitted by law.

With regard to the second case, Case No. 16BB-CR00101-01, Movant admitted that on April 29, 2014, he knowingly distributed more than five grams of marijuana to a person and that he also knowingly distributed marijuana to that same person on April 25, 2014. Movant admitted that no threats or promises had been made to him to entice him to plead guilty to these charges and that no one had promised him or could promise him what his sentence would be. Movant also acknowledged understanding that the court could sentence him to any term within the range of punishment permitted by law. Finally, Movant stated he understood that he faced from five- to fifteen-years' imprisonment on the B felony and up to seven-years' imprisonment and/or a fine not to exceed $5,000 on the C felonies.

Having found a factual basis for the pleas, the court found that Movant's pleas were voluntary and unequivocal and made with an understanding of the charges, and the court accepted Movant's pleas. The following exchange then occurred regarding Movant's sentence:

THE COURT:… Are you waiving the [sentencing assessment report]?
[PLEA COUNSEL]: Yes, your Honor.
THE COURT: Okay. [Movant], I'm gonna follow the recommendation. Do you know of any legal reason why judgment and sentence should not be imposed at this time?
[MOVANT]: No.
THE COURT: Okay. In the case ending in 101, Count I, I'm gonna sentence you to six years in the Missouri Department of Corrections; Count II, six years in

3

Missouri Department of Corrections.  In the case ending in 763 on Count I I'm gonna sentence you to seven years in the Missouri Department of Corrections. These two cases will run concurrent with each other and their counts will run concurrent, but they're going to run consecutive to the case ending in 270.  Is that right?

[PROSECUTOR]:  Yes, sir.  That's what he's presently serving on the 270.

THE COURT:  Okay.  So they'll run consecutive to the case you're currently serving.  You understand that; right?

[MOVANT]:  Yes, sir.

THE COURT:  Okay.  All right.  I am gonna retain jurisdiction under 217.362 and send you up to the long-term treatment program.

After the court sentenced Movant to six-years' imprisonment on each of the drug charges and seven-years' imprisonment on the resisting arrest charge, to run concurrently with each other but consecutively to a sentence he was then serving in another case, for a total of thirteen-years' imprisonment, the court stated that it would retain jurisdiction under Section 217.362 and send Movant to the LTDP.  Subsequently, however, it was determined that Movant was already serving a sentence in the Department of Corrections ("DOC") when the instant cases were filed. The DOC determined, based on their "calculation," that Movant had conflicting sentences and therefore could not be placed in the long-term treatment program.  After Movant was deemed ineligible for placement in the LTDP, his sentences were executed.

On October 13, 2016, Movant timely filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035.  On October 19, 2016, the motion court appointed post-conviction counsel.  On November 15, 2016, post-conviction counsel entered his appearance.  On November 17, 2016, the transcript from Movant's criminal case was filed.  Post-conviction counsel requested an additional 30 days in which to file the amended motion, and that motion was granted.  Thereafter, post-conviction counsel timely filed an amended motion on Movant's

4

behalf. Following an evidentiary hearing, the motion court denied Movant's Rule 24.035 motion. This appeal follows.[3]

## Standard of Review

Our review of the denial of a post-conviction motion under Rule 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Johnson v. State, 529 S.W.3d 36, 39 (Mo. App. W.D. 2017). The motion court's findings and conclusions are clearly erroneous only if, after review of the entire record, we are left with the definite and firm impression that a mistake has been made. Johnson, 529 S.W.3d at 39. Movant has the burden of showing by a preponderance of the evidence that the motion court clearly erred in its ruling. Id.

After a guilty plea, our review is limited to a determination of whether Movant's plea was knowing and voluntary. Taylor v. State, 456 S.W.3d 528, 533 (Mo. App. E.D. 2015). To establish ineffective assistance of counsel, Movant must show both (1) that his attorney failed to conform his representation to the degree of skill, care, and diligence of a reasonably competent attorney under similar circumstances and (2) that he was prejudiced as a result. Taylor, 456 S.W.3d at 534. To prove prejudice, Movant must show that but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial. Id.

Rule 24.035 provides the exclusive remedy for a person "convicted of a felony on a plea of guilty . . . who claims that the conviction or sentence imposed violates the constitution and laws of this state...." Rule 24.035(a).

---

[3] Additional facts relevant to Movant's points on appeal will be set forth, as needed, in the discussion section below.

## Discussion

Movant raises four points on appeal. As Points I and II are essentially the same claim of error, we address them together. In Point I, Movant argues the motion court clearly erred in denying his motion for post-conviction relief because the trial court sentenced Movant to the LTDP without verifying his eligibility for the LTDP. In Point II, Movant argues the motion court clearly erred in denying his motion for post-conviction relief because plea counsel was ineffective in failing to verify that he was eligible for the LTDP and in advising him to accept the plea agreement and enter a guilty plea. Specifically, Movant contends because his plea rested upon the guarantee that he was being sentenced to the LTDP, the actions of the trial court and plea counsel rendered his plea involuntary. In Point III, Movant argues the motion court clearly erred in rejecting his claim that he was subjected to double jeopardy when he pled guilty to resisting arrest in two different cases. In Point IV, Movant argues the motion court clearly erred in rejecting his claim that plea counsel was ineffective for failing to advise him that he had a double jeopardy defense.

## Double Jeopardy Claims

At the outset, we address Movant's Points III and IV. With respect to Point III, Movant alleged in his amended motion that he was subjected to double jeopardy because the two charges of resisting arrest that he pled guilty to in two separate cases, Case No. 15BB-CR00270-01 and Case No. 15BB-CR00763-01, were part of a continuing course of conduct.

Specifically, Movant alleged that in Case No. 15BB-CR00270-01, he was charged with the class A misdemeanor of resisting a lawful stop in that, on April 19, 2015, in Warren County, Officer Andrew Sitton ("Officer Sitton") was attempting to make a lawful stop when Movant fled from the officer. Movant was accused of violating an order of protection and while on scene

6

investigating the order of protection violation, officers observed Movant traveling through the Fast Lane Central parking lot from Steinhagen Road in Warrenton. At this point, Officer Sitton pulled onto Highway 47 from the gas station to conduct a stop of Movant's vehicle. Movant got onto the I-70 entrance ramp from Highway 47, at which point Officer Sitton activated his emergency equipment and saw Movant pass a vehicle on the shoulder of the entrance ramp and weave in and out of traffic on I-70. Officer Sitton returned to the original location where the victim of the order of protection violation received another phone call from Movant stating that he was running from the police. On July 7, 2015, Movant pled guilty to the charge and was sentenced to one year in the county jail.

Movant further alleged that, subsequently, he was charged with the class D felony of resisting a lawful stop in Case No. 15BB-CR00763-01, in that on April 18, 2015, Officer Tomlin of the Wright City Police Department was dispatched to assist the Warrenton Police Department with an active pursuit of Movant. While traveling westbound on Veteran's Memorial Parkway, Officer Tomlin observed a vehicle matching the description Movant's vehicle. Officer Tomlin passed the vehicle and observed Movant operating the vehicle. At this point, Officer Tomlin activated his emergency equipment, and immediately Movant accelerated his vehicle and ran a stop sign at Elm and Veterans Memorial Parkway, in Wright City. Officer Tomlin then pursued Movant eastbound on I-70, and witnessed Movant passing a vehicle on the shoulder of the road at a high rate of speed and following too close to the vehicles in front of him. Subsequently, Movant admitted that he failed to yield to the lawful stop in order to avoid being taken into custody for a court order violation.

On August 2, 2016, Movant appeared before the trial court to enter a guilty plea with respect to the resisting a lawful stop by fleeing charge and to the distribution of a controlled

substance charges. The prosecutor recited the underlying facts of Case No. 15BB-CR00763-01 and Movant acknowledged these facts. Movant also acknowledged that he was a prior and persistent offender.

The trial court found a factual basis for the plea , found that Movant understood the nature of the charges, and that his pleas were voluntary and unequivocal and sentenced Movant to seven-years' imprisonment on the resisting arrest charge, to run consecutively to the sentence he was already serving in Case No. 15BB-CR00270-01.

Thereafter, in his amended motion, Movant alleged that he was subjected to double jeopardy because the State prosecuted him for a continuing course of conduct for which he had already been convicted in Case No. 15BB-CR00270-01.

At the evidentiary hearing, Movant testified that while plea counsel discussed possible defenses with him, she never discussed a possible double jeopardy defense prior to his plea. Movant testified that if counsel had advised him of a double jeopardy defense, he would not have pled guilty to the resisting a lawful stop charge in Case No. 15BB-CR00763-01.

Movant testified that there was one police chase that began in Warrenton, but Wright City law enforcement were dispatched to assist in the pursuit. Movant stated that he did not exactly remember the day, "it was either the 18th or the 19th, initiated in Warrenton, Missouri," and that the two charges were "both the same day within ten or fifteen minutes from each other, one police chase in the same day."

On cross-examination, the prosecutor pointed out that she had told Movant she would agree to long term treatment if Movant agreed to consecutive sentences with the earlier case; therefore, Movant gave up a better offer in order to obtain long-term treatment. The complete

8

exchange between Movant and the prosecutor concerning the negotiated plea offer is reflected

below:

> [PROSECUTOR]. Okay. So did your attorney convey to you my original recommendation on these cases that you pled to 15 in 2016?
> [MOVANT]. Uh, I don't recall.
> Q. You don't know if she told you that I was asking for six years and seven years to serve?
> A. Yes. Yes, I remember that.
> Q. And then you came back and said can I have long-term treatment; right?
> A. I believe so, yes.
> Q. And I said I'll agree to long-term treatment if you get consecutive time; right?
> A. Correct.
> Q. So this was your request that it be long-term treatment?
> A. Correct.
> Q. And you were already in the Department of Corrections when you made that request; correct?
> A. Yes, I was.
> Q. And you had researched it and somebody told you you qualified for long-term treatment?
> A. Uhm, I wasn't—I was unable to research anything. I know that my attorney I guess spoke with you, reached an agreement that I would get sentenced to the long-term treatment. She came to me with the idea. I thought it was a good idea and I accepted the plea agreement. When I was convicted I was sentenced to the long-term treatment. Later on I found out that I didn't qualify for the treatment because of a previous sentence.
> Q. Well, I'm confused because just now you said that Miss Thoman was your lawyer; right?
> A. Correct.
> Q. And you said that Miss Thoman came to you with the idea but just before that you said it was your idea and what I remember was that you asked Miss Thoman to come to me and request long-term treatment. Cause that's how it happened; right?
> A. Okay. Yes.
> [PROSECUTOR]: Nothing further, Judge.

At the evidentiary hearing, Ms. Thoman confirmed that she represented Movant on Case

No. 15BB-CR00763-01 and that she discussed possible defenses with him. Ms. Thoman testified

she discussed a possible double jeopardy defense to the resisting arrest charge, but after conducting

some research and talking about it as a possible defense with Movant, she determined, based upon the cases she had read, that there was no valid double jeopardy claim. Ms. Thoman testified that she "explained all this" to Movant.

In denying Movant's double jeopardy claim, the motion court found that the two cases involved the same incident, "in which … officers from the Warrenton Police Department were in pursuit of [Movant] who left Warrenton and began traveling east on Interstate 70 when Officer Tomlin joined pursuit." However, the motion court found that the misdemeanor charge was for resisting a lawful stop by fleeing from Officer Sitton, while the felony charge was for resisting a lawful stop by fleeing from Officer Tomlin. The motion court concluded that Movant "fled on two separate occasions and from two different officers; once when he fled from Officer Sitton in Warrenton, and once when he fled from Officer Tomlin on Interstate 70" and that, therefore, there was no meritorious double jeopardy claim.

The United States Constitution's double jeopardy clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." The clause contains two distinct protections for criminal defendants: (a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense. State v. Flenoy, 968 S.W.2d 141, 143 (Mo. banc 1998). The protection applies only to multiple punishments or prosecutions for the "same offence." Flenoy, 968 S.W.2d at 143. Multiple convictions are permissible if the defendant has in law and in fact committed separate crimes. Id. The double jeopardy clause is not violated by punishing a defendant for more than one offense arising from the same set of facts. State v. Tipton, 314 S.W.3d 378, 380 (Mo. App. S.D. 2010). Moreover, separate offenses can arise from a single set

10

of facts where they are based on different acts or a separate intent.  State v. Tyler, 196 S.W.3d 638, 641 (Mo. App. W.D. 2006).

Here, Movant contends that he was convicted twice for the same offense because resisting arrest is a continuing course of conduct offense.  Under Section 556.041, a person cannot be convicted of more than one offense if, "[t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses."  Section 556.041(4).

Movant relies for his analysis on State v. Good, 851 S.W.2d 1 (Mo. App. S.D. 1992).  In Good, the defendant was charged with two counts of resisting arrest by using or threatening to use violence or physical force.  Both counts were identical except that they each named a different officer.  Good, 851 S.W.2d at 2.  One officer attempted to execute a warrant for the defendant's arrest, but when he approached the defendant, the defendant threatened the officer with a knife.  Id.  When another officer arrived on the scene to assist, the defendant drew a second knife and accosted the second officer.  Id.  Based on these facts, the State charged the defendant with two counts of resisting arrest, one as to each officer.  Id.  The Court reversed defendant's convictions holding that double jeopardy barred multiple resisting arrest convictions of the defendant, who resisted two arresting officers arising out of the same incident.  Specifically, the Court found that the appropriate unit of prosecution for the crime of resisting arrest is the substantive act of undertaking a resistance to the arrest, not how many officers were attempting to arrest defendant:

> The gist of the offense of resisting arrest as defined by the [statute] is the action of the defendant.  "It is clear from the language of the statute that the General Assembly of Missouri intended to prohibit flight as one of several means of resisting arrest.  The gravamen of the offense is resisting arrest, not flight from a law enforcement officer. (Footnote omitted)."  State v. Long, 802 S.W.2d 573,

11

575 (Mo. App. 1991). The gist of the offense is not dependent upon how many officers were attempting to arrest the defendant….

Id. at 5-6.

The instant case is distinguishable from Good. In Good, the two charges were exactly the same except for the officer involved. However, here, the record shows that Movant fled on two separate occasions and from two different officers, once when he fled from Officer Sitton in Warrenton, and once when he fled from Officer Tomlin, who after activating the emergency equipment on his vehicle in Wright City pursued Movant eastbound on I-70. In other words, unlike in Good, the charges in the present case involved different officers, different places, and different acts. Therefore, there were separate incidents of conduct in this case.

With respect to Point IV, Movant argues that plea counsel was ineffective for failing to advise him that he had a double jeopardy defense to Case No. 15BB-CR00763-01, thereby rendering his plea involuntary.

As stated above, in Case No. 15BB-CR00270-01, Movant was charged with the class A misdemeanor of resisting a lawful stop when Officer Sitton was attempting to make a lawful stop, on April 19, 2015, and Movant fled from him. Movant pled guilty to this charge on July 7, 2015 and was sentenced to one year in the county jail.

On August 2, 2016, Movant appeared in court to enter a guilty plea with respect to Case No. 15BB-CR00763-01 and Case No. 16BB-CR00101-01. Following the prosecutor's recitation of the underlying facts of Case No. 15BB-CR00763-01, resisting a lawful stop and fleeing from Officer Tomlin, who after activating the emergency equipment on his vehicle in Wright City pursued Movant eastbound on I-70, Movant acknowledged these facts as accurate.

The trial court found a factual basis for the plea and found that Movant understood the nature of the charges, and that his pleas were voluntary and unequivocal. Thereafter, the court

12

sentenced Movant to seven years on the resisting arrest charge, to run consecutively to the sentence he was serving in Case No. 15BB-CR00270-01.

In his amended motion, Movant pled that plea counsel was ineffective for failing to advise him that the felony resisting a lawful stop charge was barred by double jeopardy due to his misdemeanor plea.

In denying this claim, the motion court found that the misdemeanor charge was for resisting a lawful stop by fleeing from Officer Sitton, while the felony charge was for resisting a lawful stop by fleeing from Officer Tomlin. Further, the motion court found that the record showed Movant fled on two separate occasions and from two different officers, once when he fled from Officer Sitton in Warrenton, and once when he fled from Officer Tomlin on Interstate 70. The motion court concluded that there was not a meritorious double jeopardy claim, and therefore plea counsel was not ineffective for failing to advise Movant of such a defense. The motion court's findings and conclusions are not clearly erroneous.

Ms. Thoman testified she investigated the matter and determined that there was no double jeopardy defense and so advised Movant. Nevertheless, relying on Good, Movant argues that Ms. Thoman was incorrect and that resisting arrest is a continuing course of conduct offense that subjected him to double jeopardy. For the reasons outlined under Point III, we find that Good is distinguishable from the instant case. Moreover, contrary to Movant's contentions, the Court in Good did not determine that resisting arrest was a continuing course of conduct, but rather that the unit or prosecution was based upon the action of the defendant and not the number of officers involved. Good, 851 S.W.2d at 5.

Here, the record clearly shows that the charges, as described in the probable cause statements, were different in that they involved different officers, different places, and different

13

acts. Further, the evidence here, unlike in Good, shows that Movant's actions were interrupted and involved two separate flights from two attempts by two officers in different police vehicles to stop Movant in different locations. Finally, as double jeopardy is an affirmative defense, it is Movant's burden to prove that it applies. Tipton, 314 S.W.3d at 380. Movant failed to meet his burden of showing that he had a viable double jeopardy defense and that plea counsel was ineffective for failing to raise such a defense. The motion court's findings and conclusions are not clearly erroneous. Points III and IV are denied.

## Long Term Drug Program

With respect to Points I and II, Movant alleged in his amended motion that (a) he was denied due process of law when the trial court failed to have the DOC determine his eligibility for long-term treatment before sentencing and (b) he was denied effective assistance of counsel when plea counsel inaccurately assured Movant that he would be placed into the LTDP.

In denying this claim, the motion court found that Movant's plea was made knowingly and voluntarily. The motion court found that at the plea hearing Movant acknowledged that no one had promised him what his sentence would be. The motion court further found that the sentence and judgment stated explicitly that Movant would be enrolled in long-term treatment *if eligible* and, therefore, the motion court concluded, Movant's claim that he believed he was guaranteed long-term treatment was refuted by the record. Finally, the motion court found that plea counsel's testimony did not support Movant's claim that she promised Movant he would be eligible for long-term treatment. The motion court's findings are clearly erroneous.

Here, the record shows that Movant testified that when he pleaded guilty, he reasonably believed he would be placed in the LTDP. At the evidentiary hearing, Movant testified that his attorney told him that if he pled guilty, he would be placed into the LTDP. Movant testified that

14

to his knowledge, neither his attorney nor the plea court checked to see whether he was eligible for such a program. Movant stated that he pled guilty because he believed that he would be placed into the program. Movant testified that he believed this because he had signed a plea agreement stating that he would be placed in the program but that he would not have pled guilty had he known he was not eligible for the LTDP.

Ms. Thoman testified that she discussed plea deals with Movant. She testified that the prosecutor had made an offer but she did not remember the number of years. Ms. Thoman testified that Movant asked if long-term drug treatment was a possibility, and the prosecutor agreed to a "different sentence but with long-term drug treatment." Ms. Thoman further testified that she did not specifically recall telling Movant that he would be placed into the LTDP, but expected that he would be.

Ms. Thoman testified that it was generally her practice to check with the probation officer to determine whether, prior to a plea, a defendant qualifies for institutional treatment or the LTDP. However, in Movant's case, Ms. Thoman could not specifically recall whether she had done so. Ms. Thoman acknowledged that it was common practice that whenever anyone was sentenced to a treatment program, this came with the "caveat if they so qualify." Ms. Thoman testified that she did not recall if she had explained to Movant that the plea agreement he signed was based on whether he qualified for the program or whether she just told him that he would be placed in the program. She testified that she knew Movant had the requisite number of convictions to qualify; however, on the issue of the conflicting sentence, she could not remember if she had spoken to Movant about that specifically.

"Mistaken beliefs about sentencing affect a defendant's ability to knowingly enter a guilty plea if the mistake is reasonable and the mistake is based upon a positive representation

15

upon which the movant is entitled to rely." Dorsey v. State, 115 S.W.3d 842, 845 (Mo. banc 2003). When a movant claims that he pleaded guilty due to a mistaken belief about the sentence, the test is whether a reasonable basis existed in the record for that belief. Evans v. State, 315 S.W.3d 404, 405 (Mo. App. E.D. 2010). Here, Movant pleaded guilty based on a mistaken belief about the sentence and plea agreement. The record shows that the plea agreement Movant entered into was for seven-years' imprisonment *with* long-term treatment, and the court imposed that sentence. Moreover, plea counsel's advice led Movant to mistakenly believe that he would be eligible for the LTDP, and Movant reasonably relied upon that advice in deciding to plead guilty rather than go to trial.

In reaching this result, we rely upon our recent decision in Williams v. State, ED105708, 2018 WL 2306687 (Mo. App. E.D. May 22, 2018). In Williams, a case factually similar to the instant one, the movant argued that (1) "the motion court clearly erred in denying his motion for post-conviction relief when it sentenced Movant to [the long-term treatment program] without verifying his eligibility for the program" and (2) "the motion court clearly erred in denying his motion for post-conviction relief because plea counsel was ineffective in failing to verify that he was eligible for [the long-term treatment program] and in advising him to accept the plea agreement and enter a guilty plea." Williams, ED105708, 2018 WL 2306687, at *3. He further argued that, "because his plea rested upon the guarantee that he was being sentenced to [the long-term treatment program], the actions of the trial court and plea counsel rendered his plea involuntary." Id. In agreeing with the movant, we held as follows:

> Movant's claim that his guilty plea was involuntary based on the fact that he was misinformed about his eligibility for long-term treatment is supported by the record. Plea counsel failed to verify that Movant was eligible for [the long-term treatment program] in advising him to accept the plea agreement and enter a plea of guilty; therefore, Movant received ineffective assistance of counsel. In addition, because Movant's plea rested upon the guarantee that he was being

16

sentenced to long-term treatment, his plea was unknowing and involuntary. The motion court clearly erred in denying Movant's Rule 24.035 motion for post-conviction relief.

Id., 2018 WL 2306687, at *5.

The instant case is also similar to State ex rel. Taylor v. Moore, 136 S.W.3d 799 (Mo. banc 2004). In State ex rel. Taylor, the defendant pleaded guilty to drug trafficking and the plea agreement provided that defendant be placed in long-term treatment pursuant to Section 217.362. Taylor, 136 S.W.3d at 801. However, like here, after sentencing, the DOC determined that defendant was ineligible for the program. Id. The Missouri Supreme Court noted that the statute requires the sentencing judge notify the DOC *before* sentencing someone to long-term treatment and determined that defendant was entitled to habeas relief because the plea court erred in sentencing him without first verifying his eligibility for the treatment program. Id. The Court then added that "if [the defendant] had known he was ineligible for [the treatment program], he would have rejected the plea agreement and gone to trial." Id. at 802.

As in both Taylor and Williams, here Movant's guilty plea was premised on his being sentenced to the treatment program. Based on plea counsel's representations and advice, Movant reasonably expected to be eligible for the LTDP but was later found to be ineligible. This constitutes prejudice. Taylor, 136 S.W.3d at 802; Williams, ED105708, 2018 WL 2306687, at *4.

Finally, just as the trial court in Taylor and Williams erroneously placed the burden on defendant to request an eligibility check, so too did the motion court here. Id.; Id. Section 217.362 requires the judge to notify the DOC for screening. It does not require the offender to request screening. Id.; Id.

17

Here, we find Movant's claim that his guilty plea was involuntary based on the fact that he was misinformed about his eligibility for long-term treatment is supported by the record. Plea counsel failed to verify that Movant was eligible for the LTDP in advising him to accept the plea agreement and enter a plea of guilty; therefore, Movant received ineffective assistance of counsel. In addition, because Movant's plea rested upon the guarantee that he was being sentenced to long-term treatment, his plea was unknowing and involuntary. The motion court clearly erred in denying Movant's Rule 24.035 motion for post-conviction relief. Points I and II are granted.

## Conclusion

The Judgment is affirmed in part and reversed and remanded in part consistent with this opinion.

_____
Honorable Mary K. Hoff

Philip M. Hess, Presiding Judge and Robert G. Dowd, Jr., Judge: concur