

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111834 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| vs. | ) | No. 18BB-CR00732-01 |
| | ) | |
| BRIAN KEITH HEATHCOCK, | ) | Honorable Jason H. Lamb |
| | ) | |
| Defendant/Appellant. | ) | Filed: July 16, 2024 |

The defendant, Brian Keith Heathcock, appeals the judgment and sentence entered by the Circuit Court of Warren County following his conviction by a jury of first-degree tampering with a motor vehicle, in violation of section 569.080 RSMo. (2016).[1] Defendant contends that his prosecution in Warren County violated his right to be free of double jeopardy because he had already pled guilty to first-degree tampering by unlawfully operating the same vehicle, owned by the same victim, on the same date in Montgomery County. The jury also convicted Defendant of resisting arrest by fleeing, in violation of section 575.150; and attempted victim tampering, in violation of section 575.270. The trial court sentenced Defendant as a persistent felony offender to a total of 10 years of imprisonment, including a sentence of five years for first-degree tampering.

---

[1] All statutory references are to RSMo. (2016) except as otherwise indicated.

We conclude that the State's prosecutions of Defendant in Montgomery County and again in Warren County constituted successive prosecutions for the same offense of first-degree tampering, resulting in multiple punishments for the same offense. As such, the State's prosecution in Warren County violated the prohibition against double jeopardy contained in the Fifth Amendment to the U.S. Constitution. We reverse Defendant's conviction for first-degree tampering in Warren County, and vacate his sentence for that offense. Defendant has not challenged his conviction and sentences for resisting arrest and attempted victim tampering, and thus, we affirm the trial court's judgment in all other respects.

Factual and Procedural Background

Defendant's argument challenges the sufficiency of the evidence to convict him of a separate tampering offense in Warren County. Viewed in the light most favorable to the jury's verdict, the following evidence was adduced at trial. *State v. Mason*, 616 S.W.3d 345, 347 (Mo. App. E.D. 2020).

Defendant and B.R. were in a romantic relationship. At about 5:00 p.m. on September 25, 2018, B.R. was driving her vehicle, a silver Hyundai Santa Fe, east on the I-70 outer road in Montgomery County, and Defendant was a passenger in the vehicle. B.R. and Defendant argued, B.R. pulled to the side of the road, and exited the vehicle. When B.R. eventually returned to the vehicle, she allowed Defendant to drive. Soon thereafter, Defendant thought that B.R. was using her phone to record him. Defendant threw B.R.'s phone out the window, slowed the vehicle enough for B.R. to jump out to retrieve her phone, then drove away without B.R.'s consent, leaving her stranded on the I-70 outer road. B.R. eventually obtained a ride from a passerby, contacted police, and telephoned her parents. B.R. reported the vehicle as stolen, and a description of the vehicle was broadcast to law enforcement.

2

A Warren County Sheriff's deputy on duty the night of September 25, 2018 received a report of the stolen silver Hyundai Santa Fe.[2] At 8:41 p.m., the deputy also received a report of a vehicle matching the same description driving over lawns in Warren County. The deputy was responding to the call about the vehicle driving over lawns when he saw a silver Hyundai Santa Fe, bearing the license plate number of the stolen vehicle, pass him on the road. The deputy turned, activated his lights and siren, and pursued the vehicle. The vehicle made multiple U-turns during the pursuit, allowing the deputy to clearly see the driver's face. The vehicle eventually entered and drove through a creek until it crashed. The deputy lost sight of the vehicle after it drove into the creek bed, and when the deputy again located the vehicle, the driver had fled. At trial, the deputy identified Defendant as the driver of the silver Hyundai Santa Fe that he pursued.

Early on the morning of September 26, 2018, a patrol sergeant with the Warren County Sheriff's Department observed Defendant walking on the north I-70 service road near the Warrenton Walmart. Defendant was wet, cold, tired, and muddy. Defendant told the sergeant that he had been walking around Warrenton during the night, but did not know where he had walked. Defendant told the sergeant that he took his girlfriend's vehicle after an argument the day before, and he knew she was going to call the police. Defendant told the sergeant that he parked the vehicle at Walmart, stole some items from Walmart, and then left his girlfriend's vehicle parked there. Defendant told the sergeant that he left Walmart on foot, and denied driving the vehicle during the pursuit by the Warren County Sheriff's deputy. The sergeant arrested Defendant without incident.

---

[2] Warren County is located immediately east of Montgomery County.

The State in Warren County charged Defendant with first-degree tampering with a motor vehicle "in that on or about September 25, 2018, in the [C]ounty of Warren, State of Missouri, the defendant knowingly and without the consent of the owner unlawfully operated an automobile, a silver Hyundai Santa Fe." The State also charged Defendant in Warren County with resisting arrest for his flight from the deputy, and attempted victim tampering for his later attempts to persuade B.R. to recant her allegation that Defendant took her vehicle without consent.

In addition, prior to trial in Warren County, Defendant was charged with first-degree tampering with a motor vehicle "in that on or about September 25, 2018, in the county of Montgomery, State of Missouri, the defendant knowingly and without the consent of the owner unlawfully operated an automobile, a silver in color Hyundai Santa Fe." Defendant pled guilty to this charge in Montgomery County in 2019, and received a sentence of three years in the Missouri Department of Corrections.

Defendant filed a motion to dismiss the Warren County tampering charge prior to trial on double jeopardy grounds. In the alternative, Defendant sought a bill of particulars. The court held a pre-trial hearing. The State acknowledged that the first-degree tampering charge occurred on the same date, involved the same vehicle, and involved the same victim. Nevertheless, the State argued that the Warren County tampering charge was a separate crime because it occurred nearly four hours after Defendant originally took the vehicle from B.R. in Montgomery County, and it occurred when Defendant left the vehicle parked at a Walmart in Warren County, returned to the vehicle, and drove it away for the second time. The trial court overruled Defendant's motion, denying both dismissal and a bill of particulars.

4

The parties proceeded to trial. Defendant again moved to dismiss the tampering charge in his motion for judgment of acquittal at the close of the State's case. The State argued that it was charging Defendant for "the events that took place in this county that are charged, not the events that took place in Montgomery County so it can't be double jeopardy." Defendant did not testify. Beyond Defendant's statement to the arresting patrol sergeant that he left the vehicle at Walmart, there was no independent corroborating evidence adduced by the State tending to prove that Defendant interrupted his operation of the vehicle by parking it at Walmart, leaving the vehicle for some time, and then returning to the vehicle and driving it away again. On this basis, Defendant argued that the State failed to prove that the Warren County tampering charge was different than the Montgomery County tampering charge—that the State failed to prove the *corpus delicti* of a separate tampering offense committed in Warren County. Defendant maintained that "the State presented no evidence of these alleged intervening circumstances at trial—that [Defendant] got out of the vehicle and got back into it at Walmart, then operated it a second time thereafter." The trial court overruled Defendant's motions for judgment of acquittal at the close of the State's case, at the close of all the evidence, and ultimately, for a new trial.

The jury convicted Defendant of first-degree tampering with a motor vehicle, resisting arrest by fleeing an officer, and attempted victim tampering. The trial court sentenced Defendant as a persistent felony offender to five years of imprisonment for first-degree tampering with a motor vehicle and five years for resisting arrest, to be served concurrently. The court further sentenced Defendant to five years of imprisonment for attempted victim tampering, to be served consecutively to the other two sentences. Defendant appeals only his conviction and sentence for first-degree tampering with a motor vehicle.

5

<u>Discussion</u>

On appeal, Defendant claims the trial court erred in entering a judgment of conviction and sentencing him on the charge of first-degree tampering with a motor vehicle in Warren County because this denied Defendant his rights to be free from double jeopardy and multiple punishments for the same offense in that Defendant had previously entered a plea of guilty to, and was sentenced for, first-degree tampering with a motor vehicle in Montgomery County for the same conduct on the same date.

*Standard of Review*

Whether an individual's right to be free from double jeopardy has been violated is a question of law. *State v. Aston*, 434 S.W.3d 530, 533 (Mo. App. E.D. 2014). "We review allegations of double jeopardy violations *de novo* without deference to the trial court." *State v. Muldrew*, 629 S.W.3d 99, 103 (Mo. App. E.D. 2021).

We review a challenge to the sufficiency of the evidence to determine whether the State presented sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that the defendant committed the charged offense. *Mason*, 616 S.W.3d at 348. We view the evidence in the light most favorable to the jury's verdict, and accept as true any reasonable inferences from this evidence, disregarding evidence and inferences to the contrary. *Id*. We do not reweigh the evidence on appeal, but instead defer to the jury's factual findings, as the jury is free to believe all, some, or none of the testimony. *Id*. Nevertheless, we cannot supply missing evidence, nor can we give the State the benefit of unreasonable, speculative, or forced inferences. *Id*.

6

*Analysis*

The Fifth Amendment to the United States Constitution establishes that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Fourteenth Amendment applies this protection against double jeopardy to the states. *Peiffer v. State*, 88 S.W.3d 439, 442 (Mo. banc 2002). The Double Jeopardy Clause contains two distinct protections for criminal defendants: (1) protection from successive prosecutions for the same offense after either a conviction or an acquittal; and (2) protection from multiple punishments for the same offense. *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012); *Stuart v. State*, 565 S.W.3d 766, 773-74 (Mo. App. E.D. 2019). The Clause bars the State from splitting a single offense into separate parts, and then prosecuting the offense piecemeal. *State v. Brandon*, 523 S.W.3d 476, 480 (Mo. App. E.D. 2016). Double jeopardy attaches to a guilty plea upon its unconditional acceptance. *Peiffer*, 88 S.W.3d at 444.

In addition to these general principles, section 556.041 limits certain convictions for multiple offenses. Section 556.041 is Missouri's general cumulative punishments statute. *State v. Onyejiaka*, 671 S.W.3d 796, 799 (Mo. banc 2023). Section 556.041 provides that:

> When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. *Such person may not, however, be convicted of more than one offense if:*
> (1) *One offense is included in the other, as defined in section 556.046; or*
> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
> (4) *The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.*

(Emphasis added). One offense is included in the other when "[i]t is established by proof of the *same* or less than all the *facts* required to establish the commission of the offense charged[.]" Section 556.046.1(1) RSMo. (2016 & Supp. 2023) (emphases added).

However, the protections afforded by the Double Jeopardy Clause apply only to multiple punishments or prosecutions for the same offense. *State v. Harris*, 153 S.W.3d 4, 7 (Mo. App. W.D. 2005). In other words, when a defendant has, in law and fact, committed separate crimes, multiple convictions are permissible and do not violate the Double Jeopardy Clause. *State v. Kamaka*, 277 S.W.3d 807, 811 (Mo. App. W.D. 2009). When each charge is founded on different conduct or when a separate *mens rea* is newly formed, the conduct gives rise to an additional crime, *id.*, and punishing a defendant for more than one offense arising from the same set of facts does not violate the Double Jeopardy Clause, *Stuart*, 565 S.W.3d at 774.

Defendant first argues that the *Blockburger*, or "same-elements," test prevents his conviction for the same conduct on the same date in both Montgomery and Warren Counties.

The Double Jeopardy Clause bars a successive prosecution unless each offense contains a unique element not contained in the other. *Liberty*, 370 S.W.3d at 546 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Missouri has codified, in section 556.046, the test established in *Blockburger* and known as the "same-elements test." *Peiffer*, 88 S.W.3d at 443; *McIntyre v. Caspari*, 35 F.3d 338, 343 (8th Cir. 1994). Missouri courts typically apply the "same-elements" test to determine whether multiple charges comprise the same offense. *Liberty*, 370 S.W.3d at 546. We determine the elements of each offense at issue and compare them. *Kamaka*, 277 S.W.3d at 813. If each offense contains an element that the other lacks, then the Double Jeopardy Clause does not bar the later prosecution. *Id*.

8

Here, the State charged Defendant with first-degree tampering in both Montgomery and Warren Counties. First-degree tampering as charged against Defendant in each county is defined in section 569.080:

1. A person commits the crime of tampering in the first degree if he or she:

***

(2) Knowingly receives, possesses, sells, or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

In Montgomery County, where Defendant's conduct began, the State charged Defendant with first-degree tampering with a motor vehicle, in violation of section 569.080.1(2) "in that on or about September 25, 2018, in the [C]ounty of Montgomery, State of Missouri, the defendant knowingly and without the consent of the owner unlawfully operated an automobile, a silver in color Hyundai Santa Fe." Defendant pled guilty to this charge in Montgomery County and received a sentence of three years in the Missouri Department of Corrections. In Warren County, where Defendant's conduct ended, the State charged Defendant with first-degree tampering with a motor vehicle, in violation of section 569.080.1(2), "in that on or about September 25, 2018, in the County of Warren, State of Missouri, the defendant knowingly and without the consent of the owner unlawfully operated an automobile, a silver Hyundai Santa Fe."

Critical to the determination of whether the two prosecutions are for the "same offense" is whether the two offenses consist of the same elements. Although the State argued at trial that it was prosecuting Defendant for "the events that took place in this county that are charged, not the events that took place in Montgomery County," venue is not an element of first-degree tampering with a motor vehicle. *State v. Stewart*, 640 S.W.3d 174, 178 (Mo. App. E.D. 2022). Nowhere in section 569.080 is the location of the offense listed as an element. Under this statute, location is not a fact necessary to constitute the crime of first-degree tampering with a motor

9

vehicle. *See State v. Taylor*, 238 S.W.3d 145, 148 (Mo. banc 2007) (under statute at issue, location was not a fact necessary to constitute crime charged).

There is no dispute that Defendant was charged and prosecuted twice—once in Montgomery County and once in Warren County—with identical offenses of first-degree tampering in violation of section 569.080.1(2) for unlawfully operating "an automobile," the same vehicle, namely B.R.'s silver Hyundai Santa Fe, without her consent on September 25, 2018. Defendant's conviction for first-degree tampering in Warren County was established by proof of all the same facts required to establish the charged offense of first-degree tampering in Montgomery County to which Defendant previously pled guilty. Neither charged offense contains a statutory element that the other lacks, nor necessitates proof of a fact which the other does not. *Liberty*, 370 S.W.3d at 546.

Our Supreme Court held in *Peiffer v. State* that St. Louis County's prosecution of Peiffer for stealing a motor vehicle violated double jeopardy because he had already pled guilty to the lesser-included offense of first-degree tampering in St. Louis City for the same conduct. 88 S.W.3d at 440-41. Likewise, in *McIntyre v. Caspari*, the Eighth Circuit concluded that McIntyre's two prosecutions violated the *Blockburger* test. 35 F.3d at 339. McIntyre was convicted in St. Louis County of stealing for taking a car from a dealership in the County, and he was also convicted of first-degree tampering in St. Louis City, where he was arrested while driving the same car two days later. *Id*. at 338-39. In granting *habeas* relief, the Eighth Circuit stated, "[t]he same elements test, the sole standard we must apply in double jeopardy cases like the one before us today, requires that '*each* offense contain an element not contained in the other.'" *Id*. at 344 (quoting *United States v. Dixon*, 509 U.S. 688, 696 (1993)) (emphasis in original).

Successive prosecutions for stealing a vehicle in one county and first-degree tampering for possessing or unlawfully operating the same vehicle two days later in a neighboring county violate the Double Jeopardy Clause of the United States Constitution based on the *Blockburger*, or the same-elements, test. *Peiffer*, 88 S.W.3d at 440-41; *McIntyre*, 35 F.3d at 338-39. In addition, our Supreme Court has held that jeopardy attaches at the time of entry of an unconditional plea. *Peiffer*, 88 S.W.3d at 445. Here, there were no conditions associated with Defendant's plea in Montgomery County; therefore, jeopardy attached to the Montgomery County tampering charge when Defendant entered his guilty plea. *Id*.

The State does not address the same-elements test. Instead, the State seeks to distinguish *Peiffer* because that case "turned on whether tampering was a lesser-included offense of stealing. … The holding in *Peiffer* has nothing to do with Defendant's case because the defendant there was charged with tampering based on his possession of the automobile without the owner's consent." The State's argument is unpersuasive. Indeed, the facts in *Peiffer* are not identical to the facts in the present case, and *Peiffer* involved tampering via possession of an automobile as a lesser-included offense of stealing. The import of *Peiffer* to the present case is not the precise offenses charged there. Rather, based on the *Blockburger* test, each of the two offenses did not contain a statutory element not included in the other, and each offense did not necessitate proof of a fact that the other did not. 88 S.W.3d at 444. Here, Defendant's tampering charge in Montgomery County and his tampering charge in Warren County consisted of the same statutory elements for each offense, and necessitated proof of all the same facts. Defendant was charged with the same distinct action and same method of tampering. Further, we observe that in *Peiffer*, the lapse of two days between the defendant's charge of stealing the vehicle in St. Louis County and his charge of tampering with the same vehicle in St. Louis City did not preclude our

11

Supreme Court from determining Peiffer's right to be free of double jeopardy was violated. *Id*. at 440-41.

We have applied the same-elements test as we are required to do by the U.S. Supreme Court's decision in *Blockburger* and codification of the *Blockburger* test in section 556.046.1(1) RSMo. (2016 & Supp. 2023). We find that Defendant's successive prosecutions in Montgomery County and Warren County for first-degree tampering committed by unlawfully operating the same vehicle in each county on the same day, under the circumstances presented here, violated Defendant's right to be free of double jeopardy, as did the successive prosecutions in different venues in the *Peiffer* and *McIntyre* cases.

Defendant next argues that his conduct in Warren County comprised an uninterrupted, continuing course of conduct that began in Montgomery County. We need not reach this argument, however, because we find the allowable unit of prosecution specified in section 589.080.1(2) is unambiguously denoted as tampering with "an automobile"—one, single automobile or other motor-propelled vehicle. The unit of prosecution intended in section 569.080.1(2) is dispositive.

As stated earlier, the protections afforded by the Double Jeopardy Clause apply only to multiple punishments or prosecutions for the same offense. *Harris*, 153 S.W.3d at 7. Separate offenses can arise from a single set of facts when the offenses are based on different acts or a separate intent. *Stuart*, 565 S.W.3d at 774. When a defendant's conduct is continuous, *involves more than one item (unlike here), or involves more than one victim (unlike here),* the test for double jeopardy focuses on the conduct the legislature intended to proscribe under the statute. *Liberty*, 370 S.W.3d at 546; *Muldrew*, 629 S.W.3d at 104. If the legislature intended to allow cumulative punishments, then there is no double jeopardy issue when a defendant is charged

12

more than once for the same conduct. *State v. Johnson*, 675 S.W.3d 620, 626 (Mo. App. S.D. 2023). Double jeopardy analysis regarding multiple punishments is limited, therefore, to determining whether the legislature intended cumulative punishments. *Liberty*, 370 S.W.3d at 546-47.

"The legislature may express its intent to authorize multiple punishments in one of two ways." *Onyejiaka*, 671 S.W.3d at 799. To determine whether the legislature intended multiple punishments, we look first to the "unit of prosecution" allowed by the statute under which the State charged the defendant. *Liberty*, 370 S.W.3d at 547; *Muldrew*, 629 S.W.3d at 104. We understand the legislature's intent by ascertaining what "unit of prosecution" is provided under an applicable criminal statute. *Johnson*, 675 S.W.3d at 626. We also infer legislative intent by looking to the plain meaning of a statute's words. *Id*. "The scope of conduct comprising one violation of a criminal statute defines the unit of prosecution." *Muldrew*, 629 S.W.3d at 104 (quoting *Brandon*, 523 S.W.3d at 480). In the absence of an offense-specific indication of legislative intent, we next look to the legislature's generally-expressed intent regarding multiple punishments in the general cumulative punishment statute, section 556.041. *Onyejiaka*, 671 S.W.3d at 799.

Neither party cites any case addressing the allowable unit of prosecution for first-degree tampering with a motor vehicle, nor has our own research revealed such a case. At oral argument, both parties maintained that each operation without consent is the unit of prosecution for first-degree tampering with a motor vehicle as the State charged in this case. We disagree. We first consider the language of section 569.080.1(2) to determine the allowable unit of prosecution the legislature intended. More specifically, we must consider whether the legislature unambiguously expressed an intent in section 569.080.1(2) to impose separate punishments

13

either for each county, or venue, in which a defendant unlawfully operates the same automobile without the owner's consent, or for each time a defendant enters the same vehicle and drives it without consent.

Despite Defendant's argument that "[w]hether or not [s]ection 569.080.1(2) allows for multiple prosecutorial units is, at best, ambiguous[,]" we find that section 569.080.1(2) is clear and *un*ambiguous. The statute plainly states "[a] person commits the crime of tampering in the first degree if he or she … [k]nowingly receives, possesses, sells, or unlawfully operates *an* automobile …." Section 569.080.1(2) (emphasis added). "An" is an indefinite article used, in place of the article "a," before singular words that begin with a vowel sound. *Johnson*, 675 S.W.3d 626. "The plain and ordinary meaning of the word 'a' is the singular 'one.'" *Id.* (quoting *State v. Nichols*, 865 S.W.2d 435, 437 (Mo. App. E.D. 1993)). In section 569.080.1(2), "an" means *one, single* automobile or other motor-propelled vehicle. *See id*. ("The legislature's use of 'an' [before the word accident] means one offense of leaving the scene is tied to a single accident."); *see also Harris*, 153 S.W.3d at 7 (by using "a" in the phrase "a controlled substance" in the statute, legislature denoted allowable unit of prosecution); *Nichols*, 865 S.W.2d at 427 (the word "a" denoted allowable unit of prosecution for unlawful use of weapons so that each knife defendant carried concealed upon his person was allowable unit of prosecution).

When a criminal statute prefaces the object of the offense with the word "a," the statute unambiguously authorizes singular units of prosecution.[3] *Harris*, 153 S.W.3d at 8. The plain, unambiguous language of section 569.080.1(2), as charged here, intends to prohibit the conduct

---

[3] In considering the allowable unit of prosecution, use of the word "a" has been held to be unambiguous, *Harris*, 153 S.W.3d at 8, in contrast to use of the word "any," which our Courts have held to be ambiguous, *see, e.g., Liberty*, 370 S.W.3d at 548 (statutory proscription against possession of "*any* obscene material" is ambiguous in terms of allowable unit of prosecution).

of knowingly unlawfully operating one, single motor-propelled vehicle.[4] Nothing in the plain language of the statute can reasonably be interpreted to divide such conduct into different acts or to create a new and separate *mens rea* based solely on the time or place of operation, such as the number of counties in which a person operates the same vehicle or the number of hours that lapse. In this case, there is no dispute that Defendant unlawfully operated "an automobile"—only one, single motor vehicle—owned by B.R. in both Montgomery and Warren Counties on September 25, 2018. Defendant was not charged with undertaking one of the other substantive acts a person could commit to constitute tampering; he was charged with unlawfully operating the same vehicle in two counties.

We recognize that the legislature intended to allow multiple punishments for first-degree tampering with multiple motor vehicles, or for separate and distinct acts committed involving a single motor vehicle, such as receiving and then selling the same vehicle without the owner's consent. By using the word "an," the relevant unit of prosecution is clearly and unambiguously tied to each, individual motor-propelled vehicle that was the subject of tampering. The unit of prosecution expressed in section 569.080.1(2) is not tied to the duration or location of the tampering offense. The unit of prosecution is not tied to the number of times the defendant exits, re-enters, and operates the same vehicle. Nor is it tied to an additional offense, such as resisting arrest, that the defendant may commit while tampering with one, single vehicle. Given the plain language of section 569.080.1(2), we find that the legislature did not intend to allow cumulative punishments, as were imposed upon Defendant here, for knowingly unlawfully operating "an

---

[4] Likewise, section 569.080.1(2) intends to prohibit the conduct of knowingly receiving one, single motor-propelled vehicle without the owner's consent; knowingly possessing one, single motor-propelled vehicle without the owner's consent; and knowingly selling one, single motor-propelled vehicle without the owner's consent. The acts of receiving, possessing, selling, and unlawfully operating one, single motor-propelled vehicle all require proof of different facts, which would be key to establishing separate and distinct acts of tampering.

15

automobile"—*one, single* motor vehicle—without the owner's consent, regardless of whether such operation occurred in multiple locations or spanned some measure of time or involved the commission of additional offenses.

The State's theory of prosecution and on appeal, however, is that "Defendant's actions in this case demonstrate two distinct acts of unlawful operation [of] the vehicle without permission." In response to Defendant's motion to dismiss, the State argued to the trial court that Defendant "acknowledges that he drove the car to Walmart, he went in, he stole some items and then he got back in the car and he drove it again. So these are two separate offenses, your Honor, and not in violation of double jeopardy." Now on appeal, the State for the first time suggests that Defendant's resisting arrest by fleeing the deputy in Warren County establishes that he formed a new *mens rea*, and thus committed a tampering offense in Warren County, separate from his tampering offense committed in Montgomery County. The State cites no authority for the proposition that committing another offense, such as resisting arrest, while operating a motor vehicle without the owner's consent results in a separate tampering offense, and we find this contention unpersuasive. Also in its brief on appeal, the State again argues that Defendant's stop at Walmart effected a separate tampering offense:

> Any doubt about whether two convictions were warranted in this case was laid to rest after Defendant admitted to police following his arrest on September 26, 2018, that he drove the vehicle to a Walmart, got out, and went inside the Walmart. … When Defendant returned to the vehicle after being inside the Walmart and proceeded to unlawfully operate it a second time, a second conviction for first[-]degree tampering was permitted without violating Defendant's rights against double jeopardy.

To avoid the Double Jeopardy Clause's prohibition on multiple punishments, Defendant's conviction in Warren County must be supported by proof that Defendant committed a separate act or formed a new intent by unlawfully operating the vehicle after interrupting his conduct by stopping at Walmart for some unspecified period. Even were we to assume for the

16

sake of argument that such an alleged stop at a store could interrupt Defendant's operation of the vehicle so that it might be established he committed a separate act or formed a new intent, the State cannot prevail in this case because it has failed to prove the *corpus delicti* of the alleged separate tampering offense.

Proof of the alleged interruption of Defendant's operation of the vehicle is important to the double jeopardy analysis. Interruption of operation is not an element of tampering that must be found by the jury. Nevertheless, substantial evidence is needed to prove that Defendant interrupted his operation of the vehicle, thereby committing a separate act or forming a new intent. But aside from Defendant's self-serving statement to the patrol sergeant that he left the vehicle at Walmart, the record contains no independent corroborating evidence whatsoever demonstrating that Defendant went to Walmart, that Defendant interrupted his operation of B.R.'s vehicle, that Defendant engaged in different conduct in Warren County than in Montgomery County, that he committed a separate act in Warren County, or that he formed a new and separate *mens rea* in Warren County. Without independent corroborating evidence, the State could not prove the *corpus delicti* of a separate tampering offense.

Defendant points to his repeated arguments in the trial court that "the State presented no evidence of … alleged intervening circumstances at trial." The record reveals that Defendant argued in support of his motion for judgment of acquittal at the close of all the evidence that the State "put no evidence on of anything, any change, any getting out of the car, any re-taking the car to make it a second case out of this county." In other words, Defendant argues that the State failed to establish the *corpus delicti* of a separate offense in Warren County. We agree.

"Missouri adopted the *corpus delicti* rule from English common law to avoid conviction of a criminal defendant without corroborating evidence independent of the defendant's out-of-

17

court confession or 'extrajudicial admissions.'" *State v. Burrow*, 680 S.W.3d 162, 167 (Mo. App. E.D. 2023). A defendant's confession not made in open court, uncorroborated by circumstances, and without proof from another source that a crime was committed will not justify a conviction. *Id*. The State is required to prove that a criminal act was committed. *State v. Troyer*, 663 S.W.3d 853, 858 (Mo. App. S.D. 2023). With no evidence presented, other than Defendant's confession, demonstrating proof of any criminal act, the State failed to prove the *corpus delicti* of the charged crime. *Id*. Here, no independent corroborating evidence was presented justifying Defendant's conviction of a separate tampering offense in Warren County.

We cannot supply missing evidence, nor can we give the State the benefit of unreasonable, speculative, or forced inferences. *Mason*, 616 S.W.3d at 348. And without *any* independent corroborating evidence that Defendant committed a separate act of tampering or formed a new *mens rea* in Warren County, the evidence in this case is insufficient to support the State's charge of a separate tampering offense committed in Warren County.

Conclusion

We conclude that the State's prosecutions of Defendant in Montgomery County and again in Warren County constituted successive prosecutions for the same offense of first-degree tampering, resulting in multiple punishments for the same offense based on knowingly unlawfully operating the same motor vehicle without consent. As such, the State's prosecution in Warren County violated the prohibition against double jeopardy contained in the Fifth Amendment to the U.S. Constitution. We reverse Defendant's conviction for first-degree tampering in Warren County, and vacate his sentence for that offense. Defendant has not

18

challenged his conviction and sentences for resisting arrest and attempted victim tampering, and thus, we affirm the trial court's judgment in all other respects.[5]

                                                 _____

                                                 Angela T. Quigless, J.

Lisa P. Page, P.J., concurs

Gary M. Gaertner, Jr., J., dissents in a separate opinion

---

[5] The dissent cites numerous cases—especially assault cases—involving distinct acts, different means of commission, and multiple victims to support the argument that a person could hypothetically commit multiple tampering offenses involving the same vehicle. We find these cases inapposite. The dissent's analysis would have a person charged with a separate tampering offense for unlawfully operating the same vehicle without consent every time the person stopped for gas or went into a convenience store or fast-food restaurant. Such a plethora of tampering charges for unlawful operation of the same vehicle represents the sort of harm the Double Jeopardy Clause and section 556.041 seek to avoid.

19



# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111834 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| v. | ) | Cause No. 18BB-CR00732-01 |
| | ) | |
| BRIAN KEITH HEATHCOCK, | ) | Honorable Jason H. Lamb |
| | ) | |
| Appellant. | ) | Filed: July 16, 2024 |

### DISSENT

I respectfully dissent. While I believe the ultimate question of whether Defendant's conviction should be reversed here is a closer one, and I can understand the majority's leaning from a policy standpoint of not penalizing Defendant twice for first-degree tampering under these facts, I have concerns about how the legal analysis in the majority opinion will impact future cases. Specifically, (1) I believe the majority too broadly applies the same-elements test here, where Defendant was charged with two counts of the *same* offense, and such application may lead to improper reversals in the future; (2) I believe the majority's statutory interpretation regarding the unit of prosecution for first-degree tampering in Section 269.080.1(2) potentially creates confusion for practitioners and does not comport with the legislature's clear intent; and (3) I believe the majority's application

of the *corpus delecti* rule to a trial court's double-jeopardy determination is the first holding of its kind and stretches the rule beyond its purpose. Applying the proper legal and evidentiary standards in this particular case, I would also uphold the trial court's determination under the circumstances here and affirm Defendant's conviction.

1.  Double Jeopardy Analysis

The majority first lays out the Blockburger, or "same-elements," test, noting that successive prosecutions are barred by the Double Jeopardy Clause unless each requires proof of a unique element not contained in the other. Maj. Op. at 8 (citing State v. Liberty, 370 S.W.3d 537, 546 (Mo. banc 2012) (citing Blockburger v. U.S., 284 U.S. 299, 304 (1932))). However, this test is most useful, and by its terms is limited to, where a defendant has been charged with two different offenses for the same conduct. See Blockburger, 284 U.S. at 304 ("[t]he applicable rule is that where the same act or transaction constitutes a violation of *two distinct statutory provisions*, . . ." (emphasis added)); Liberty, 370 S.W.3d at 560 n.7 (Russell, J., concurring) (noting Blockburger rule is distinguished in cases where focus is not on defendant "being charged under two separate statutes but rather being charged with multiple counts under the same statute"); Horsey v. State, 747 S.W.2d 748, 751 (Mo. App. S.D. 1988) (en banc) (Blockburger test is "in some instances difficult of application [because i]t assumes identification of a *separate* offense that requires proof of a fact not required by another offense" (emphasis added)).

Here, Defendant was charged with two counts of the same offense.[1] The elements of the two charges here were identical, thus our analysis must instead be guided by cases

---

[1] While the charges originated in different counties, I agree with the majority that venue is not a determining factor in the question of whether a defendant has committed one or more offenses of first-degree tampering. See Maj. Op. at 16-17.

2

involving defendants convicted of multiple counts under the same statute.[2] The Supreme Court of Missouri in State v. Liberty considered a defendant's convictions of eight counts of possession of child pornography based on the defendant's possession of eight separate images. 370 S.W.3d at 540. The court laid out the Blockburger test, but then noted its limitations in circumstances such as those in the present case, which often underlie charges for multiple counts under the same statute:

> But when a defendant's conduct is continuous, involves more than one item or involves more than one victim, the test more appropriately is focused on the conduct the legislature intended to proscribe under the statute.

Liberty, 370 S.W.3d at 546.

Even the Blockburger Court considered this scenario, as the defendant there argued in one point that his multiple convictions under the same statute for illegal drug sales were part of a continuous course of conduct and therefore constituted only one offense. Blockburger v. U.S., 284 U.S. 299, 301-02 (1932). The Court distinguished offenses that are continuing by their nature from offenses completed in an isolated act. Id. at 302 (contrasting In re Snow, 120 U.S. 274 (1887) (finding offense of cohabitating with more than one woman to be a continuing offense) with Ebeling v. Morgan, 237 U.S. 625 (1915) (finding each successive tearing of a mailbag to constitute one commission of the offense of willfully tearing a mailbag with intent to rob).

> The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty.

---

[2] Similarly, the majority relies on the first subsection of Missouri's general cumulative statute, which codifies the Blockburger test. Section 556.041(1). As I explain, *infra*, I believe subsection (4), regarding continuing offenses, is more applicable under the circumstances here, and codifies the rule in cases considering double jeopardy where a defendant is charged with multiple counts under the same statute.

3

Id. (quoting Wharton's Criminal Law (11th ed.) § 34 n.3).

However, overlooking Blockburger and its progeny's distinction between two charges of the same statutory offense regarding continuous conduct and two charges stemming from different statutes, the majority proceeds to liken the present case to those of Peiffer v. State, 88 S.W.3d 439 (Mo. banc 2002), in which the defendant was convicted of both stealing and first-degree tampering by possession in two different counties related to the same instance of taking the same vehicle, and McIntyre v. Caspari, 35 F.3d 338 (8th Cir. 1994), in which the defendant likewise was convicted of stealing a car in St. Louis County and then of first-degree tampering by possessing the same car in St. Louis City two days later. Though the majority states that "[t]he import of Peiffer to the present case is not the precise offenses charged there[,]" maj. op. at 11, I believe that the offenses charged there are exactly why Peiffer is not applicable here. Neither Peiffer nor McIntyre considered a situation where the defendant was charged with two counts of the same offense regarding conduct that is continuing in nature.[3] Both the Blockburger Court and our own Supreme Court have made this distinction, and so should we here.

Thus, I find the majority's application of the Blockburger test and conclusion immediately thereafter that these prosecutions violated Defendant's right to be free from double jeopardy, maj. op. at 12, is potentially subject to future misuse. While the majority, I think rightly, does not end the analysis there, the conclusory statements following

---

[3] Moreover, neither case considered a charge of first-degree tampering by *operation*, which further distinguishes them from the case here and which this Court has determined is *not* a lesser-included offense of stealing. State v. DeRoy, 623 S.W.3d 778, 787 (Mo. App. E.D. 2021) (distinguishing Peiffer). Because possession is a continuing offense, it can span the passage of two days and overlap with the initial taking under the facts of Peiffer and McIntyre, but because operation does not necessarily continue for that whole time, or even necessarily occur at the taking, first-degree tampering by operation is not a lesser-included offense of stealing. See id. The precise offenses charged in those cases were crucial to the outcome, and the case here is simply not analogous.

4

application of the same-elements test and comparison of <u>Peiffer</u> and <u>McIntyre</u> I believe muddy the waters and will potentially result in over-application of double jeopardy concerns, beyond what the legislature intended.

    2. <u>Unit of Prosecution</u>

The majority continues by noting Defendant argues his conduct was uninterrupted, but stating they need not reach such argument because the unit of prosecution for first-degree tampering centers on the vehicle at issue. Maj. Op. at 12. While I agree that consideration of the legislature's intended unit of prosecution is required by the circumstances and precedents such as <u>Blockburger</u> itself and <u>Liberty</u>, I find the majority's analysis incomplete. Whether Defendant's conduct was interrupted is the decisive factor here.

Acknowledging that "multiple punishments are permissible if the defendant has in law and fact committed separate crimes," the Supreme Court of Missouri notes that courts first look to the statutory language defining the offense to determine the legislature's intended "unit of prosecution." <u>State v. French</u>, 79 S.W.3d 896, 898-99 (Mo. banc 2002) (citing <u>Blockburger</u>, 284 U.S. at 304); <u>see also</u> <u>Liberty</u>, 370 S.W.3d at 546; <u>State v. Roggenbuck</u>, 387 S.W.3d 376, 381 (Mo. banc 2012); <u>State v. Sanchez</u>, 186 S.W.3d 260, 267 (Mo. banc 2006). The unit of prosecution, or "unit of the crime,"[4] is essentially the scope of the offense, or what constitutes one distinct commission of the crime. The legislature may choose a definition of each offense that fits the legislature's desired intent to either impose multiple punishments or a single punishment for particular conduct, depending on the circumstances.

---

[4] <u>U.S. Universal C.I.T. Credit Corp</u>, 344 U.S. 218, 227 (1952) (Douglas, J., dissenting).

5

Here, the relevant portion of Section 569.080.1(2) states that a person commits first-degree tampering if he or she "[k]nowingly receives, possesses, sells, or unlawfully operates an automobile . . . ." The majority duly considers the unit of prosecution for this offense; focuses on the word "an," which denotes a singular object; and concludes therefore the unit of prosecution is centered on the vehicle under Section 569.080.1(2). Maj. Op. at 14-15 (citing State v. Harris, 153 S.W.3d 4 (Mo. App. W.D. 2005) (finding defendant could be convicted of separate counts of possession of a controlled substance for each substance possessed); Johnson, 675 S.W.3d at 527-28 (leaving the scene of an accident permits separate charges for each accident, defined as each impact to a person or vehicle); State v. Nichols, 865 S.W.2d 435 (Mo. App. E.D. 1993) (unlawful use of a weapon permits separate charges for each weapon)).

I do not disagree that the language "an automobile" denotes a unit of prosecution for first-degree tampering, such that if a person were to take a commercial car transporter loaded with several vehicles, that person could be charged under Section 569.080.1(2) with multiple counts of first-degree tampering by possessing the truck as well as each of the vehicles. I believe such a conclusion is supported by the cases noted above and cited by the majority. However, I would find the legislature also intended that the particular action by which a person commits first-degree tampering is an additional unit of prosecution, given the language here.[5]

---

[5] I see no reason why there need be only one unit of prosecution intended by the legislature. Assault is an example of another crime having two units of prosecution: both the act or method of assault and the person who is the object of the assault. Compare State v. Garrett, 598 S.W.3d 904, 907 (Mo. App. E.D. 2020) (unit of prosecution is object of assault: "evidence of a single gunshot in the direction of multiple human targets can support multiple convictions for assault . . . ") and State v. Bowles, 754 S.W.2d 902, 911 (Mo. App. E.D. 1988) ("[t]he overwhelming weight of authority holds that a single act of assault by the defendant which affects two or more persons constitutes multiple offenses") with Tyler, 196 S.W.3d at 641 (unit of prosecution is method of assault: each assault against same victim "involved a different method of assault, and each was separated in time intervals sufficient to allow [defendant] to reflect upon his conduct . . .") and Schofield v.

6

Section 569.080.1(2) lists four acts that constitute first-degree tampering: receiving, possessing, selling, or unlawfully operating. Missouri courts have found that where the legislature provides more than one distinct act that could constitute an offense, a defendant can conceivably commit two instances of the offense regarding the same object. See State v. Pitiya, 623 S.W.3d 217 (Mo. App. W.D. 2021). For instance, in Pitiya, the offense at issue was resisting arrest, which includes two distinct acts that can constitute resistance: (1) threatening the use of violence or physical force, and (2) fleeing from the officer. Id. at 221. The court noted precedent holding "the appropriate unit of prosecution for the crime of resisting arrest is the substantive act of undertaking a resistance to arrest," and thus the defendant's charges for both fleeing from an officer by driving at high rates of speed and for attempting to hit the same officer's patrol vehicle did not violate the Double Jeopardy Clause. Id.

Similarly, here, there are four substantive acts a person could undertake to constitute tampering with a vehicle, and I would conclude the legislature intended to penalize a defendant for committing each act, even if it involves the same vehicle. For example, a person could unlawfully operate a vehicle and then sell it, and I would find the legislature intended that person could be charged with two separate counts of first-degree tampering under the plain language of Section 569.080.1(2). The sale requires both actions and *mens rea* that are independent and distinct from operation of the vehicle. See Pitiya, 623 S.W.3d at 221 n.4 (quoting State v. Barber, 37 S.W.3d 400, 404 (Mo. App. E.D. 2001)) ("Missouri courts have repeatedly found separate offenses 'where the conduct is dissimilar

---

State, 750 S.W.2d 463, 466 (Mo. App. W.D. 1988) (upholding three convictions of first-degree assault because defendant attempted to kill or cause serious physical injury by means of a dangerous instrument in three different ways against the same victim).

7

or the actions are separated in time . . . [and] a separate *mens rea* is formed for each act . . .'").

By the same token, I would find that the plain language of Section 569.080.1(2) permits charging a person with two counts of tampering for two separate instances of unlawful operation of the same vehicle, or two separate instances of unlawful possession, receipt, or sale of the same vehicle.  See Barber, 37 S.W.3d at 404 (rejecting a double jeopardy challenge where defendant raised the same knife to the same victim twice in the course of one altercation because actions were separate enough in time for defendant to form separate *mens rea* for each act); see also Roggenbuck, 387 S.W.3d at 381 (multiple counts of possession of child pornography permitted where evidence showed defendant obtained possession of images at different times and places); Sanchez, 186 S.W.3d at 267 (conviction of two counts of kidnapping of same victim permitted based on different ways person was victimized).

The majority acknowledges that the legislature intended to prohibit the different acts included in the tampering statute even if they involve a single motor vehicle, such as receiving and then selling the same vehicle, but then concludes nevertheless that the legislature did not intend to punish separate acts of operating the same vehicle.  Maj. Op. at 15-16.  I find these conclusions inconsistent and potentially confusing for prosecutors and courts to apply in the future.  If the plain language permits separate charges for separate acts of tampering, as the majority grants, I see nothing in the statutory language limiting those separate charges only to *different* acts, but not separate instances of the same act. Thus, I would not foreclose the possibility that Defendant committed two distinct acts of first-degree tampering by unlawfully operating the vehicle at issue.

8

Moreover, the majority reasons that "the legislature did not intend to allow cumulative punishments, as were imposed upon Defendant here, for knowingly unlawfully operating 'an automobile'—*one, single* motor vehicle—without the owner's consent, regardless of whether such operation occurred in multiple locations or spanned some measure of time or involved the commission of additional offenses." Maj. Op. at 15-16. While I largely agree, I believe these statements miss the point and may further confuse application of the first-degree tampering statute. Indeed, the issue of separate offenses is not tied to location, time, or other offenses: a person could conceivably operate a vehicle two separate times all in the same county, within a relatively short period of time, and without committing any other offenses; conversely, a person could operate a vehicle only once, continuously for hours, spanning many counties, and committing multiple other offenses such as resisting arrest, driving while intoxicated, or leaving the scene of an accident. These factors are unrelated, as the majority notes. But rather than shifting focus to the fact that these relate to *one vehicle*, there is instead one simple question we must ask about the *operation*: whether the instances of operation are distinct from one another, such that the defendant stopped operating the vehicle, and then had an opportunity to reconsider and form a new intent to undertake a new operation of the vehicle.[6] See State v. Tyler, 196 S.W.3d 638 (Mo. App. W.D. 2006) (if defendant has an opportunity to reconsider his

---

[6] While the majority is correct that my interpretation of the plain language of Section 569.080.1(2) would permit multiple offenses if a person makes multiple stops, I do not believe in practice this would often happen, as the State would have to provide evidence of each separate instance of operation, each stop and re-start, and even a stop at a fast-food restaurant would not necessarily interrupt operation if the person utilized a drive-through window or curbside service. However, I do believe the language permits it, and I do not believe it would constitute "harm" or offend double jeopardy because the legislature is clear regarding its intent. See Blockburger, 284 U.S. at 305 (noting that where plain language prescribes multiple punishments, "if that be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction").

9

actions, or charges are based on different acts or separate *mens rea* is newly formed, conduct gives rise to an additional crime).

This analysis is consistent with Section 556.041, Missouri's general cumulative punishment statute. Subsection (4) allows for the possibility that a person can commit multiple offenses through the same conduct, but states a person cannot be convicted of two offenses where "[t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses." Section 556.041(4). Here, Defendant argues that first-degree tampering with a vehicle is a continuing offense that takes place over a period of time, and his operation of the vehicle was uninterrupted and therefore part of one continuous act of first-degree tampering. First-degree tampering by operation of the vehicle as charged here is a continuing offense,[7] thus the decisive question is whether Defendant's conduct was interrupted, constituting two separate instances of unlawful operation of the vehicle.

### 3. Evidentiary Standard for Double-Jeopardy Determination

The State argues that Defendant's initial operation of the vehicle in Montgomery County was interrupted by his admitted stop at Walmart in Warren County, after which he again undertook operation of the vehicle, was pursued by a deputy sheriff in Warren County, abandoned the vehicle in a creek bed, and was later apprehended in Warren

---

[7] While I do not find a Missouri case determining whether operating a vehicle is a continuing offense, the ordinary understanding of the word "operate" seems to include both an isolated moment, such as turning on the vehicle's ignition, as well as a continuing course of conduct, such as driving the vehicle over a period of time. Cf. State v. Clayborn-Muldrow, 640 S.W.3d 491, 496 (Mo. App. E.D. 2022) (noting possession, bigamy, operating a house of prostitution, and false imprisonment are all continuing offenses; others, such as striking a person, are immediately accomplished; and others, such as embezzlement, depend on the circumstances). There is no question under the facts here that Defendant was charged with operation of a vehicle that was continuous in nature, as it is undisputed he either drove it over a period of time, or over two separate periods of time.

10

County. Thus, the State argues, through these two separate instances of operating the vehicle, there was evidence to support two separate acts of first-degree tampering, and thus no double-jeopardy violation. Under the circumstances here, I would agree.

The majority notes that the standard of proof required to support the trial court's double-jeopardy determination here is substantial evidence, which the Supreme Court of Missouri stated in State v. Roggenbuck, 387 S.W.3d 376. The defendant there had been charged with five counts of possession of child pornography. Id. at 380. Citing Liberty, the court noted that if the State could show evidence demonstrating separate offenses, such as the defendant coming into possession of the images at different times or from different sources, there would be no double-jeopardy violation. Id. at 381 (citing Liberty, 370 S.W.3d at 555). The defendant in Roggenbuck argued that the jury had to find facts regarding when he came to possess each photograph beyond a reasonable doubt, but the court disagreed:

> To convict an individual of a crime in a jury trial, the state must prove each element of the offense beyond a reasonable doubt. State v. Taylor, 238 S.W.3d 145, 148 (Mo. banc 2007). The jury is not required to find facts that are not elements of the offense, such as the location of the crime for venue purposes. Id. The dates on which Roggenbuck obtained possession of the images are not an element of the offense. See Section 573.037. Consequently, the fact of when possession was obtained, while important to the double jeopardy analysis, is not an element of the offense that must be found by the jury.

Id. at 382. The court went on to note that there was substantial evidence demonstrating that the defendant acquired possession of the images at different times, and the court found no violation of the Double Jeopardy Clause. Id.

Similarly, here, the jury did not need to find an interruption of Defendant's operation of the vehicle beyond a reasonable doubt, as it was not an element of the crime.

11

The court needed only to find substantial evidence of such an interruption in order to make its determination as to whether the two charges violated the Double Jeopardy Clause.

Here, the State presented the testimony of a Warren County detective (Detective). Detective was working on patrol the day of Defendant's arrest, following up on the search for a suspect who had abandoned the vehicle at issue the previous evening in a creek bed in Warren County and had fled from a deputy sheriff pursuing him. The State introduced Detective's body camera footage, which included Detective's initial conversation with Defendant. The State played the footage for the jury during Detective's testimony. In the recording, Defendant tells Detective that he and his girlfriend "got into it," he drove the vehicle away, and 20 to 30 minutes later he stopped at Walmart. Defendant said he left the keys to the vehicle under the front seat, went inside and stole some items, and had been walking around since then. Detective testified he believed Defendant told him this story to avoid responsibility for fleeing from the sheriff's deputy the night before.

The majority concludes that Defendant's statement to Detective that he stopped at Walmart and went inside was not substantial evidence supporting the trial court's double-jeopardy determination because it was not corroborated. I disagree.

The majority relies on the *corpus delecti* rule, which is Latin for "body of the crime." State v. Madorie, 156 S.W.3d 351, 353 (Mo. banc 2005). "The term is used in the context of criminal law to describe the prosecutor's burden of proving that a crime was committed by *someone*, independent from a defendant's extrajudicial statements." Id. at 353-54. The rule originated in 17th-century England after several defendants were hanged for murder based on extrajudicial confessions, only to have the alleged victims later found still alive. Id. at 354. The rule is now accepted in the United States as a "basic requirement

12

in any criminal case." Id. "All elements of the offense must be established by independent evidence or corroborated admissions[.]" Smith v. U.S., 348 U.S. 147, 156 (1954). In Missouri, *corpus delecti* consists of two elements: "(1) Proof, direct or circumstantial, that the specific loss or injury charged occurred; (2) someone's criminality as the cause of the loss or injury." State v. Hardy, 276 S.W.2d 90, 93 (Mo. banc 1955).

Here, the *corpus delecti* of two instances of tampering was present. The first took place when Defendant initially drove the car away, and Defendant's girlfriend's report of her vehicle as stolen to police established proof that the loss occurred due to someone's criminality. Second, approximately four hours later, a Warren County Sheriff's deputy observed the stolen vehicle driving away from him as he attempted to conduct a stop, which constituted proof that the vehicle was being unlawfully operated due to someone's criminality.[8] None of this is in dispute.

However, the majority extends the *corpus delecti* rule not only to the elements of the crime itself, but to the trial court's legal determination of whether multiple charges constitute double jeopardy. While I can understand the hesitance to rely on this statement as substantial evidence, given the fact that Detective did not believe it, I am concerned about applying a legal rule in this context that has, prior to now, been in place to protect persons who, for whatever reason, confess to crimes that there is no other reason to believe even actually took place. Here, unlawful operation undoubtedly took place at both times, and Defendant confessed to neither. The question simply is, were they connected or not?

---

[8] In noting that evidence of resisting arrest here provides *corpus delecti* for unlawful operation at a time later than the initial moment of unlawful operation, I do not propose that the resisting charge is what enables a second charge of first-degree tampering. The only relevant question is whether these two times of observed unlawful operation were separated by any interruption, not whether they accompanied other crimes or took place in different counties.

13

Did Defendant continuously operate the vehicle (one crime), or did he stop, have time to decide whether to again unlawfully operate the vehicle, and then do so (two crimes)? Because this was a legal determination for the court, and not an element of the crime, I believe application of the *corpus delecti* rule is inappropriate.[9]

For this question alone, we need find only substantial evidence to support the trial court's conclusion that Defendant's operation of the vehicle in Montgomery County was separate and unconnected to his operation of the vehicle in Warren County—any evidence in the record the trial court could have relied on to make its determination. Defendant's statement that he stopped at Walmart and went inside is evidence that the trial court could have relied on to determine that his operation of the vehicle was not continuous, but was interrupted, and thus the two different times at which *corpus delecti* of unlawful operation unquestionably exists were not part of one continuous operation but were in fact two distinct operations.

In this light, Defendant's argument that his statement was not credible should not affect our analysis.[10] It is not our province to find the underlying facts—we must only determine whether the trial court's decision that Defendant's conduct was interrupted was supported by substantial evidence. I would find Defendant's admission that he stopped the vehicle and got out 20 to 30 minutes after taking it coupled with the jury's finding that Defendant fled from the sheriff's deputy in the vehicle hours later is substantial evidence

---

[9] In fact, the *corpus delecti* rule was honored in Defendant's case, given the fact that the State did not charge him with the only crime to which he confessed—stealing at Walmart—as there was no corroborating evidence that any theft took place that day.

[10] It is just as possible that Defendant did stop the car and get out but lied about stealing, as it is possible that he lied about stopping altogether. In the body camera footage, Defendant tells Detective he thought Detective was stopping him about a stealing that happened at Walmart. In response to Detective's questions about fleeing from the Warren County Sheriff's deputy, Defendant tells Detective that was not him because he was at Walmart.

14

of an interruption in Defendant's operation of the vehicle that the trial court could rely upon to support an additional charge.  Thus, I would affirm.

For the foregoing reasons, I respectfully dissent.

_____
Gary M. Gaertner, Jr., J.